Eric N. Heyer (*Pro Hac Vice*)
**THOMPSON HINE LLP**
1919 M Street, NW, Suite 700
Washington, DC 20036
Telephone: (202) 263-4128
Facsimile: (202) 331-8330
Email: eric.heyer@thompsonhine.com

Carrie A. Shufflebarger (*Pro Hac Vice*)
**THOMPSON HINE LLP**
312 Walnut Street
14th Floor
Cincinnati, Ohio 45202-4089
Telephone: (513) 352-6678
Facsimile: (513) 241-4771
Email: carrie.shufflebarger@thompsonhine.com

Menachem M. Piekarski (SBN 326531)
**THOMPSON HINE LLP**
335 Madison Avenue
12th Floor
New York, New York 10017-4611
Telephone: (212) 908.3971
Facsimile: (212) 344.6101
Email: mendy.piekarski@ThompsonHine.com

Attorneys for Plaintiff / Counterclaim Defendant
ACCESS VAPOR, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| Access Vapor, LLC, | Case No. 8:20-cv-02052-FLA-KES |
| Plaintiff / Counterclaim Defendant, | **PLAINTIFF / COUNTERCLAIM DEFENDANT ACCESS VAPOR, LLC'S OPPOSITION TO DEFENDANT ALEXANDER BREISH'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| v. | |
| California Grown E-Liquids, LLC; Jeffrey Nelson; Jeffrey Evans; Alexander Breish; and Propaganda E-Liquid, LLC, | |
| Defendants / Counterclaim Plaintiffs, | |
| and | |
| Cuttwood, LLC, | |
| Defendant. | |

# <u>TABLE OF CONTENTS</u>

RELEVANT FACTS ........................................................................................... 1

STANDARD OF REVIEW ................................................................................ 7

ARGUMENT ..................................................................................................... 8

    A.    The Pleadings Fail to Establish by "Clear and Convincing Evidence" a Lack of "Lawful Use" of the Marks at Issue by Access Vapor. ............ 8

    B.    Breish's Unclean Hands Estop Him from Asserting an Unlawful Use Defense. ................................................................................................. 12

    C.    Even if the Lawful Use Requirement Barred Access Vapor's Federal Trademark Claims, its Common Law Rights in the Marks Would Still Support its California Unfair Competition Claim. ............................... 13

    D.    Alternatively, Access Vapor Should be Given Leave to Amend. ....... 15

CONCLUSION................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albillo v. Intermodal Container Servs., Inc.*,
  114 Cal. App. 4th 190 (2003)..................................................................14

*American Academy of Pediatrics v. FDA*,
  379 F. Supp. 3d 461 (D. Md. May 15, 2019) ..........................................5

*American Academy of Pediatrics v. FDA*,
  399 F. Supp. 3d 479 (D. Md. July 12, 2019)...........................................5

*American Academy of Pediatrics v. FDA*,
  No. 8:18-cv-00883-PWG (D. Md. Apr. 22, 2020)...................................5

*American Petrofina, Inc. v. Petrofina of California, Inc.*,
  596 F.2d 896 (9th Cir. 1979) ..................................................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................7

*BBK Tobacco & Foods LLC v. Central Coast Agriculture Inc.*,
  No. 19-cv-5216, 2021 U.S. Dist. LEXIS 85449 (D. Ariz. May 4,
  2021)..........................................................................................................7

*Cal-Tech Communications, Inc. v. Los Angeles Cellular Telephone
  Co.*, 20 Cal. 4th 163 (1999) ...................................................................14

*Cedar Valley Exteriors, Inc. v. Professional Exteriors, Inc.*,
  2016 U.S. Dist. LEXIS 84868 (D. Minn. June 29, 2016) .....................11

*Century 21 Real Estate Corp. v. Sandlin*,
  846 F.2d 1175 (9th Cir. 1988).................................................................14

*Chavez v. United States*,
  683 F.3d 1102 (9th Cir. 2012)..................................................................7

*CreAgri, Inc. v. USANA Health Sciences, Inc.*,
  474 F.3d 626 (9th Cir. 2007)...........................................................8, 9, 10

*Dessert Beauty, Inc. v. Fox*,
  617 F. Supp. 2d 185 (S.D.N.Y. 2007) ................................................................ 8

*Erva Pharmaceuticals, Inc. v. American Cyanamid Co.*,
  755 F. Supp. 36 (D.P.R. 1991) ........................................................................ 12

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
  896 F.2d 1542 (9th Cir. 1990) .......................................................................... 7

*Kiva Health Brands LLC v. Kiva Brands Inc.*,
  439 F. Supp. 3d 1185 (N.D. Cal. 2020)...................................................... 14, 15

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) ............................................................................ 7

*Lopez v. Regents of the University of California*,
  5 F. Supp. 3d 1106 (N.D. Cal. 2013).............................................................. 15

*Makreas v. First National Bank of Northern California*,
  856 F. Supp. 2d 1097 (N.D. Cal. 2012)........................................................... 14

*Mallard Creek Industries, Inc. v. Morgan*,
  56 Cal. App. 4th 426 (1997) ........................................................................... 14

*McGann v. Ernst & Young*,
  102 F.3d 390 (9th Cir. 1996) ............................................................................ 7

*In re Pennington Seed, Inc.*,
  466 F.3d 1053 (Fed. Cir. 2006) ...................................................................... 11

*PhotoMedex, Inc. v. Irwin*,
  601 F.3d 919 (9th Cir. 2010) .......................................................................... 12

*Smoking Everywhere, Inc. v. FDA*,
  680 F. Supp. 2d 62 (D.D.C. 2010) .................................................................... 3

**Federal Statutes**

21 U.S.C. § 321(rr) ................................................................................................ 3

21 U.S.C. §§ 387, *et seq.* ...................................................................................... 3

21 U.S.C. § 387a(b) ........................................................................................... 3, 4

21 U.S.C. § 387j ................................................................................................... 4

THOMPSON HINE LLP
ATTORNEYS AT LAW

- iii -

ACCESS VAPOR'S OPPOSITION TO
MOTION FOR JUDGMENT ON THE
PLEADINGS

**Federal Regulations**

37 C.F.R. § 2.69 ............................................................................................. 8

*Deeming Tobacco Products To Be Subject to the Federal Food, Drug,
and Cosmetic Act, as Amended by the Family Smoking Prevention
and Tobacco Control Act; Regulations on the Sale and Distribution
of Tobacco Products and Required Warning Statements for
Tobacco Products*, 81 Fed. Reg. 28,973 (May 10, 2016) (codified at
21 C.F.R. § 1143.1) ............................................................... 4, 5, 9, 10

*Premarket Tobacco Product Applications and Recordkeeping
Requirements*, 84 Fed. Reg. 50566 (Sept. 25, 2019) ............................ 6

**State Statutes**

Cal. Bus. & Prof. Code § 17200, *et seq* .................................................... 14

**Rules**

Rule 12(b)(6) .................................................................................................. 7

Rule 12(c) ...................................................................................................... 7

THOMPSON HINE LLP
ATTORNEYS AT LAW

- iv -

Plaintiff / Counterclaim Defendant Access Vapor, LLC ("Access Vapor") respectfully submits this opposition to Defendant Alexander Breish's motion for judgment on the pleadings (Doc. 61).  Under the standard of review applicable to motions for judgment on the pleadings, Breish's claim that Access Vapor's marks fail to satisfy the "lawful use" requirement imposed by federal law for registration of trademarks under the Lanham Act fails.  The pleadings to which he cites fail to prove "by clear and convincing evidence" that either a court or the Food and Drug Administration ("FDA") has previously determined that Access Vapor marketed its products with which the marks were associated in violation of the Federal Food, Drug & Cosmetic Act ("FDCA") or that Access Vapor has engaged in a "per se" violation of the FDCA.  Indeed, to the contrary, the pleadings demonstrate that Breish could not make such a showing as to all of Access Vapor's products on which the marks have been used.  Further, even if—as Breish incorrectly alleges—Access Vapor's products on which the marks have been used were unlawfully marketed, Breish is estopped by his own unclean hands to assert an "unlawful use" defense.  Finally, even if the lawful use requirement associated with federal registration of the marks somehow barred Access Vapor's federal statutory claims, Access Vapor's common law rights in the marks would still support its claims against Breish under California's Unfair Competition Law.

## RELEVANT FACTS

Access Vapor is a Florida-based distributor of vaping products containing nicotine—otherwise known as "electronic nicotine delivery systems, or "ENDS." (Complaint, ¶ 12.)  Access Vapor is the owner of various marks consisting of or incorporating the word "CALI," including, *inter alia*, the word mark CALI PODS and the following stylized logo mark:

**CALI PODS**

The CALI PODS word mark has been issued registration no. 5718373 and the logo mark has been issued registration no. 5953789 by the U.S. Patent and Trademark Office. (*Id.*, ¶¶ 13, 14.) Importantly, Access Vapor's predecessor in interest, ANA Equity, LLC, used both the CALI PODS word mark and the logo mark in conjunction with its ENDS products prior to August 8, 2016. (Breish Counterclaim, Doc. 48, at ¶¶ 54-55; Answer to Counterclaim, Doc. 56, at ¶¶ 54-55.)

In or around January 2020, Defendant California Grown E-Liquids, LLC ("California Grown"), of which Defendant Breish is a manager, began distributing ENDS products under the mark CALI BARS. (Complaint, ¶¶ 21, 24.) The CALI BARS mark, like the CALI PODS logo, was displayed in a stacked pattern, with the term CALI appearing above the term BARS, separated by a narrow strip similar to that which appears in the CALI PODS logo mark:



(Complaint, ¶ 24.) Even though Access Vapor's counsel issued a cease-and-desist letter to California Grown in January 2020, California Grown and Breish continued

their marketing and sales of competing ENDS products containing the infringing CALI BARS logo unabated at least until the time this lawsuit was filed in October 2020.  (*Id.*, ¶ 25.)

Because Breish's motion for judgment on the pleadings is premised on his unlawful use claim, a thorough understanding of FDA's regulation of ENDS products is critical to a proper resolution of his motion.  Indeed, FDA's discretionary enforcement policy applied to the premarket authorization requirement for ENDS products is central to a proper resolution of his motion and should not have been relegated to the passing treatment he afforded it in footnote 7 of his motion.

Prior to August 8, 2016, the marketing and sale of ENDS products containing nicotine derived from tobacco plants that were not marketed for therapeutic purposes were not regulated or restricted in any manner by FDA.  *See*, *e.g.*, *Smoking Everywhere, Inc. v. FDA*, 680 F. Supp. 2d 62 (D.D.C. 2010), *aff'd*, *Sottera, Inc. v. FDA*, 627 F.3d 891 (D.C. Cir. 2010) (holding FDA's attempts to regulate ENDS products as unapproved new drugs, medical devices, or combination products a violation of the Administrative Procedure Act).  In 2009, Congress modified the FDCA by enacting the Family Smoking Prevention and Tobacco Control Act of 2009 ("TCA"), Pub. L. No. 111-31, 123 Stat. 1776 (2009), codified at 21 U.S.C. §§ 387, *et seq*.  The FDCA, as amended by the TCA, defines a "tobacco product" in relevant part as "any product made or derived from tobacco that is intended for human consumption, including any component, part, or accessory of a tobacco product."  21 U.S.C. § 321(rr).

Under Section 901 of the FDCA, at the time the TCA was enacted in 2009, its requirements applied only to cigarettes, cigarette tobacco, roll-your-own tobacco, and smokeless tobacco. 21 U.S.C. § 387a(b).  The TCA's requirements would only apply to other products satisfying the statutory definition of a "tobacco product" if and when the Secretary of Health and Human Services "by regulation deem[ed]"

such products to be "tobacco products." *Id*. Some seven years after the Tobacco Control Act was enacted, this finally came to pass. On May 10, 2016, FDA finalized its so-called "Deeming Rule" that, for the first time, deemed ENDS products containing or intended to be used with nicotine derived from tobacco plants to be "tobacco products" under the FDCA's definition.[1] The Deeming Rule took effect on August 8, 2016.[2]

For all tobacco products not commercially marketed in the United States as of February 15, 2007, section 910 of the FDCA requires manufacturers to obtain an authorization order from FDA permitting the marketing of such products before such products can be sold in the United States. *See* 21 U.S.C. § 387j. One pathway to obtain a marketing order from FDA is the pre-market tobacco application, or "PMTA" pathway. All manufacturers of ENDS products are subject to the PMTA pathway to an FDA marketing order. *See* 81 Fed. Reg. at 28,990-97.

Because thousands, if not millions, of ENDS products were already commercially marketed in the United States at the time FDA first began exercising regulatory jurisdiction over them pursuant to the Deeming Rule, in the Deeming Rule's preamble, FDA introduced a discretionary enforcement policy that allowed for delayed compliance periods for ENDS products. 81 Fed. Reg. at 29,009-15. Under this discretionary enforcement policy, PMTA submissions were required to be filed in 24 months, or by August 8, 2018. 81 Fed. Reg. at 28,977-78, 29,011. Tobacco products, including ENDS products, already on the U.S. market would not be subject to FDA enforcement action in the meantime or while a submitted PMTA was pending FDA review. *Id*.

---

[1] U.S. Food & Drug Admin., *Deeming Tobacco Products To Be Subject to the Federal Food, Drug, and Cosmetic Act, as Amended by the Family Smoking Prevention and Tobacco Control Act; Regulations on the Sale and Distribution of Tobacco Products and Required Warning Statements for Tobacco Products*, 81 Fed. Reg. 28,973 at 28,978 (May 10, 2016) (codified at 21 C.F.R. § 1143.1) (hereafter, "Deeming Rule").

[2] 81 Fed. Reg. at 28,974.

FDA's deadline for the filing of PMTAs under its discretionary enforcement policy, however, changed multiple times over the succeeding years.  In August 2017, FDA announced an extension of the period during which it did not intend to initiate enforcement action for premarket review requirements for deemed tobacco products, including ENDS, until August 8, 2022.[3]  FDA's stated rationale for this change was that it needed additional time to publish a "foundational rule" establishing the required contents of PMTAs, thereby creating the "rules of the road" for the preparation and review of these premarket applications.[4]

In 2019, however, the U.S. District Court for the District of Maryland vacated the guidance that had memorialized FDA's discretionary deferred enforcement policy and required FDA to advance the deadline for the submission of PMTAs for ENDS products then on the market to May 12, 2020.[5]  Later, following the onset of the COVID-19 pandemic, FDA requested, and the district court granted, an extension of the PMTA filing deadline to September 9, 2020.[6]  FDA also issued guidance  to industry stakeholders in early 2020 setting forth the new PMTA filing deadlines.[7]  As

---

[3] U.S. Food & Drug Admin., Guidance for Industry, *Extension of Certain Tobacco Product Compliance Deadlines Related to the Final Deeming Rule* (revised August 2017).

[4] Press Release, U.S. Food & Drug Admin., Advancing Tobacco Regulation to Protect Children and Families: Updates and New Initiatives from the FDA on the Anniversary of the Tobacco Control Act and FDA's Comprehensive Plan for Nicotine (Aug. 2, 2018), *available at* https://www.fda.gov/news-events/fda-voices/advancing-tobacco-regulation-protect-children-and-families-updates-and-new-initiatives-fda.

[5] *American Academy of Pediatrics v. FDA*, 379 F. Supp. 3d 461 (D. Md. May 15, 2019); *American Academy of Pediatrics v. FDA*, 399 F. Supp. 3d 479 (D. Md. July 12, 2019).

[6] *See* April 22, 2020 Order in *American Academy of Pediatrics v. FDA*, No. 8:18-cv-00883-PWG (D. Md.).

[7] U.S. Food & Drug Admin., Guidance for Industry, *Enforcement Priorities for Electronic Nicotine Delivery Systems (ENDS) and Other Deemed Products on the Market Without Premarket Authorization* (April 2020), available at https://www.fda.gov/media/133880/download, at 3, 6, 11, 19.

it was, FDA did not publish even a draft rule setting forth the required contents of a PMTA until September 25, 2019.[8]  Despite the PMTA filing deadline having already passed on September 9, 2020, FDA still has not finalized the draft rule establishing the required contents of a PMTA.

Prior to the PMTA filing deadline, on February 28, 2019, FDA issued a letter to Access Vapor asking it to provide information on the marketing of its ENDS products.  (Exhibit 6 to Breish Counterclaim, Doc. 48-6.)  Despite this inquiry, there is no evidence from the pleadings that FDA ever issued a warning letter or took any enforcement action against Access Vapor or any of its ENDS products.

As it was, Access Vapor filed a PMTA for its products prior to the PMTA filing deadline of September 9, 2020.  (Counterclaim, Doc. 48, at ¶ 66; Answer to Counterclaim, Doc. 56, at ¶ 66.)  In February 2021, FDA reported that, thus far, it had tallied PMTA applications for more than 4.8 million tobacco products—the majority of which are assumed to be ENDS products—that were filed prior to the September 9, 2021 filing deadline.[9]  As of the filing of this brief, FDA has not yet granted a marketing order for *any* ENDS product; rather, PMTAs for millions of tobacco products, including Access Vapor's ENDS products, remain under review.

---

[8]  U.S. Food & Drug Admin., *Premarket Tobacco Product Applications and Recordkeeping Requirements*, 84 Fed. Reg. 50566 (Sept. 25, 2019) (proposed rule), available at https://www.govinfo.gov/content/pkg/FR-2019-09-25/pdf/2019-20315.pdf.

[9]  Press Release, U.S. Food & Drug Admin., Perspective:  FDA's Progress on Review of Tobacco Product Applications Submitted by the Sept. 9, 2020 Deadline (Feb. 16, 2021), *available* at https://www.fda.gov/tobacco-products/ctp-newsroom/perspective-fdas-progress-review-tobacco-product-applications-submitted-sept-9-2020-deadline.

## STANDARD OF REVIEW

A motion for judgment on the pleadings is only properly granted when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law. *McGann v. Ernst & Young*, 102 F.3d 390, 392 (9th Cir. 1996). "Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6)." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). To survive a motion for judgment on the pleadings, then, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A pleading that offers only "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

When considering a motion for judgment on the pleadings, the allegations of the nonmoving party must be accepted as true, while the allegations of the moving party that have been denied are assumed to be false. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990) (citation omitted). A district court may also take judicial notice of matters of public record when considering such a motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Where a motion to dismiss is premised on an unlawful use claim or defense that depends on the resolution of disputed facts, the motion must be denied. *See BBK Tobacco & Foods LLC v. Central Coast Agriculture Inc.*, No. 19-cv-5216, 2021 U.S. Dist. LEXIS 85449, at **34-36 (D. Ariz. May 4, 2021) (denying motion to dismiss counterclaim premised on contention that goods in question were unlawful drug

ACCESS VAPOR'S OPPOSITION TO
MOTION FOR JUDGMENT ON THE
PLEADINGS

paraphernalia because they were primarily intended or designed for use in preparing or inhaling cannabis).

## **ARGUMENT**

**A.     The Pleadings Fail to Establish by "Clear and Convincing Evidence" a Lack of "Lawful Use" of the Marks at Issue by Access Vapor.**

Use of a mark in commerce only creates enforceable federal[10] trademark priority rights when the use is lawful.  *CreAgri, Inc. v. USANA Health Sciences, Inc.*, 474 F.3d 626, 630 (9th Cir. 2007); *see also* 37 C.F.R. § 2.69 (allowing PTO to make appropriate inquiry as to compliance with other federal legislation for the purpose of determining lawfulness of the commerce recited in the trademark registration application).   The burden of proving unlawful use in commerce by "clear and convincing evidence" rests with the party challenging a federal trademark registration and must be shown through evidence of either (i) a previous finding of noncompliance by a court or government agency having competent jurisdiction under the state involved; or (ii) a *per se* violation of a statute regulating the sale of the party's goods. *Dessert Beauty, Inc. v. Fox*, 617 F. Supp. 2d 185, 190 (S.D.N.Y. 2007) (citing *General Mills Inc. v. Health Valley Foods*, 24 U.S.P.Q.2d 1270, 1274 (T.T.A.B 1992)).   The party challenging a registration must also prove that the noncompliance was material—that is, "it was of such gravity and significance that the usage must be considered unlawful." *Id*.  The pleadings fail to establish either basis for a lack of "lawful use" of the marks at issue by Access Vapor here, much less by clear and convincing evidence.

First, nowhere do the pleadings reference any previous finding of noncompliance by a court or FDA.  To the contrary, as noted above, the pleadings

---

[10] Access Vapor's common law rights in its marks under California law is discussed in Section C., below.

imply that FDA made an inquiry about Access Vapor's products bearing the marks in 2019, but then took no enforcement action against Access Vapor.

Second, there is no basis in the pleadings to conclude that Access Vapor engaged in a *per se* violation of the FDCA.  In his motion, Breish relies upon *CreAgri* for the proposition that a product subject to FDA preclearance must actually obtain such approval before the use of the marks on such a product may be considered "lawful" and federal trademark rights may attach.  *See* Mtn. at 5.  Such a proposition overstates the actual holding of the *CreAgri* case.  There, the plaintiff readily admitted that its dietary supplement labels misstated the actual contents of the product and the product was thus misbranded under the FDCA.  *Id*. at 630-31.  While the plaintiff could have applied for an exercise of enforcement discretion by FDA on the basis of technological infeasibility of measuring the amount of the subject ingredient, the plaintiff failed to do so and, as a result, summary judgment was entered in favor of the defendant.  *Id*. at 632-34.  Significantly, *CreAgri* strongly suggests that, had the plaintiff applied for and received an exercise of enforcement discretion from FDA, no basis would have existed for concluding that the marks failed to satisfy the lawful use requirement.  *Id*. at 632-33 ("Thus, *if* CreAgri had applied for, and *if* the FDA had exercised its discretion by granting an exemption on the basis of technological infeasibility, *then* CreAgri's violation of section 101.9(g)(4) would be properly excused.").

Here, in contrast, the pleadings suggest that Access Vapor's predecessor in interest began using the CALI PODS word mark and logo mark on vaping products before such products even became subject to FDA regulation under the TCA through the August 8, 2016 publication of the Deeming Rule.  That is to say, the CALI PODS word and logo marks were first lawfully used on vaping products that were not subject to any FDA regulatory requirements whatsoever.  Moreover, the pleadings also suggest that, after Access Vapor took over control of the marks and began using

ACCESS VAPOR'S OPPOSITION TO
MOTION FOR JUDGMENT ON THE
PLEADINGS

them, FDA did not even publish a proposed rule on the requirements for a premarket tobacco application until September 2019, and Access Vapor filed a PMTA with FDA prior to the deadline of September 9, 2020.  While that PMTA remains pending and FDA has not yet granted Access Vapor a marketing authorization order, FDA has similarly not yet granted a marketing authorization order to *any* ENDS manufacturer, as it currently has under review some 4.8 *million* products for which PMTAs were submitted prior to September 9, 2020.  Instead of having to individually petition FDA for a discretionary withholding of enforcement action, as the plaintiff in *CreAgri* failed to do, Access Vapor was entitled to benefit from FDA's discretionary enforcement policy that was extended to the ENDS industry as a whole in the wake of the Deeming Rule and FDA's delayed publication of the requirements for preparing a premarket tobacco application.

Defendant Breish's suggestion that an FDA marketing order is required for any ENDS device manufacturer to have enforceable federal trademark rights in its marks is also inconsistent with the Patent and Trademark Office's own internal policies.  Section 907 of the Trademark Manual of Examining Procedure ("TMEP") addresses the "lawful use" requirement and specifically calls out marijuana and marijuana extracts as products for which a trademark registration may not issue because they remain unlawful under the federal Controlled Substances Act.[11] Nowhere, however, does the TMEP indicate that trademarks associated with ENDS products may be treated as failing to meet the lawful use requirement because the products lack premarket authorization from FDA.  Indeed, to the contrary, a search for the term "electronic cigarette" in the Patent and Trademark Office's Identification Manual lists a broad range of ENDS products, components, parts, and accessories, including electronic cigarettes, liquid nicotine solutions, and batteries, cartridges,

---

[11] U.S. Patent and Trademark Office, Trademark Manual of Examining Procedure, § 907, *available at* https://tmep.uspto.gov/RDMS/TMEP/current#/current/TMEP-900d1e1461.html.

ACCESS VAPOR'S OPPOSITION TO
MOTION FOR JUDGMENT ON THE
PLEADINGS

mouthpieces, coils, chargers, and cases.[12]    As repositories of the Patent and Trademark Office's policies, its internal manuals are entitled to some amount of deference.   *See In re Pennington Seed, Inc.*, 466 F.3d 1053, 1059 (Fed. Cir. 2006) ("While the TMEP is not established law, but only provides instructions to examiners, it does represent the PTO's established policy . . . that is entitled to our respect"); *accord Cedar Valley Exteriors, Inc. v. Prof'l Exteriors, Inc.*, 2016 U.S. Dist. LEXIS 84868, at *18 n.6 (D. Minn. June 29, 2016).

Practically speaking, a holding that federal registration is unavailable for trademarks used on ENDS products lacking premarket authorization and marketed before FDA even exercised regulatory jurisdiction over such products—as Breish suggests—would certainly come as a surprise to, for example, the many publicly traded companies that have invested millions of dollars into their respective brands of ENDS products and secured federal registrations for the corresponding marks while, like Access Vapor, still awaiting a marketing order from FDA.

As regards the ENDS industry in particular, in 2019, the director of FDA's Center for Tobacco Product filed a sworn declaration attesting to his concern that a widespread and sudden withdrawal of ENDS products from the market would lead to substantially negative public health consequences for addicted smokers who had switched to potentially less harmful ENDS products.[13]   Indeed, the complex public health considerations surrounding FDA's determinations regarding whether

---

[12] *See* Print-Out from U.S. Patent and Trademark Office, Identification Manual, *available at https://idm-tmng.uspto.gov/id-master-list-public.html#*, attached to the Declaration of Eric N. Heyer filed herewith as <u>Exhibit A</u>.

[13] *See* Declaration of Mitchell Zeller, ¶¶ 15, 22, Doc. 120-1, *American Academy of Pediatrics v. FDA*, No. 8:18-cv-00883-PWG (D. Md. June 12, 2019) ("[M]ass market exit of ENDS products would limit the availability of a potentially less harmful alternative for adult smokers seeking to transition or stay away from combustible tobacco products.  Dramatically and precipitously reducing availability of these products could present a serious risk that adults, especially former smokers, who currently use ENDS products and are addicted to nicotine would migrate to combustible tobacco products. . . . [Such a] mass market exist could adversely affect the public health."

discretionary withholding of enforcement on either a product-specific or industrywide basis is appropriate for the products that it regulates has resulted in the adoption of a broadly sweeping implied preemption doctrine whereby federal courts will refuse to step into the shoes of FDA to attempt to make individualized determinations as to whether specific regulated products are or are not in compliance with FDA enforcement policies and guidelines. *See, e.g.*, *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 924 (9th Cir. 2010) ("Because the FDCA forbids private rights of action under that statute, a private action brought under the Lanham Act may not be pursued when, as here, the claim would require litigation of the alleged underlying FDCA violation in a circumstance where FDA has not itself concluded that there was such a violation.").

Because the pleadings, construed in the light most favorable to Access Vapor, fail to establish either a prior finding by a court or by FDA of noncompliance or a *per se* violation of the FDCA, Breish cannot carry his burden of proving unlawful use of the marks by Access Vapor and his motion must be denied.

## B. Breish's Unclean Hands Estop Him from Asserting an Unlawful Use Defense.

Additionally, Breish is also estopped to assert an "unlawful use" defense by his own unclean hands. The lawful use requirement evolved from the common law doctrine of "unclean hands." *Erva Pharms., Inc. v. Am. Cyanamid Co.*, 755 F. Supp. 36, 39 n.1 (D.P.R. 1991) (citing *Cooper*, *Unclean Hands and the Unlawful Use in Commerce: Trademarks Adrift on the Regulatory Tide*, 71 Trademark Rep. 38 (1981)). Construing the complaint's allegations in the light most favorable to Access Vapor—which the Court must do at this stage—Breish, in his role as a manager of Defendant California Grown, directed the development and distribution of vaping products under a CALI BARS logo mark that, with its stacked appearance, was virtually identical to the CALI PODS logo mark found on Access Vapor's similar

products. Indeed, the similarities between the two marks were so striking that large, national distributors of vaping products contacted Access Vapor in an attempt to procure California Grown's products sold under the CALI BARS logo mark, erroneously believing that the products bearing the mark were sold by Access Vapor. (Complaint, ¶ 37.)

The complaint makes clear that Breish and California Grown first began marketing their ENDS products bearing the CALI BARS mark in or around January 2020. Construing this allegation in the light most favorable to Access Vapor, this fact would suggest that not only does Breish have unclean hands because of his willful infringement of Access Vapor's marks (including in the face of a cease-and-desist letter from Access Vapor's counsel), but that he also has unclean hands because his own competing products on which the infringing mark was first used violated the requirements of FDA's discretionary enforcement policy for ENDS products.

Allowing infringers like Breish to use the unlawful use defense as a shield to insulate themselves from liability despite their own noncompliance with the very laws about which they complain would turn the "lawful use" requirement on its head. As a result of his own use of an infringing mark on products that where themselves not in compliance with FDA's discretionary enforcement policy, Breish is estopped from escaping liability for his actions by relying on an unlawful use defense.

## C. Even if the Lawful Use Requirement Barred Access Vapor's Federal Trademark Claims, its Common Law Rights in the Marks Would Still Support its California Unfair Competition Claim.

Even if, theoretically, the "lawful use" requirement would bar Access Vapor's federal registrations and thus its trademark infringement, unfair competition, and false designation of origin claims under Counts I and II of the complaint, Access Vapor's common law rights in its marks would still support its claim for violation of the California Unfair Competition Law (Count III).

To assert a plausible claim for a violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, a plaintiff may assert either (1) an "unlawful," "unfair," or a "fraudulent" business act or practice or (2) "unfair, deceptive, untrue or misleading advertising." *Makreas v. First Nat'l Bank of N. Cal.*, 856 F. Supp. 2d 1097, 10101 (N.D. Cal. 2012) (citing *Lippitt v. Raymond James Fin. Servs.*, 340 F.3d 1033, 1043 (9th Cir. 2004)).  "A practice is prohibited as 'unfair' or 'deceptive' even if it is not 'unlawful' or vice versa." *Cal-Tech Communs., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  A practice is unlawful if it is forbidden by law, unfair if the harm to the victim outweighs any resulting utility or benefit, and fraudulent if it is likely to deceive members of the public.  *Albillo v. Intermodal Container Servs., Inc.*, 114 Cal. App. 4th 190, 206 (2003).

To state a plausible claim under the UCL for trademark infringement, a plaintiff must state a plausible claim for common law trademark infringement under California law.  *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).  A claim for common law trademark infringement only requires that the plaintiff allege (1) its prior use of the trademark; and (2) likelihood of the infringing mark being confused with its mark.  *American Petrofina, Inc. v. Petrofina of California, Inc.*, 596 F.2d 896, 897-98 (9th Cir. 1979); *Mallard Creek Indus., Inc. v. Morgan*, 56 Cal. App. 4th 426, 434-35 (1997).

In his motion to dismiss, Breish implies, without ever stating directly, that a failure to satisfy the lawful use requirement for registration of a mark under federal law also necessarily renders any common law trademark rights unenforceable.  Such is not the case, however.  In *Kiva Health Brands LLC v. Kiva Brands Inc.*, 439 F. Supp. 3d 1185 (N.D. Cal. 2020), an ongoing case in which the defendant secured a California trademark registration for a mark that was associated exclusively with the sale of cannabis products that are prohibited controlled substances under federal law, the court observed: "When a mark is used for cannabis products, the Lanham Act

does not recognize the user's trademark priority. . . . California law, however, does not prevent a user from securing common law rights to a mark when the mark is used for cannabis products." *Id*. at 1198.  Because, even if, theoretically, Access Vapor failed to satisfy the "lawful use" requirement for registration under federal law, it would still enjoy common law rights in the marks under California law, and has pled both prior use of the marks and likelihood of confusion (as demonstrated by the complaint's allegation of actual confusion on the part of Access Vapor's customers noted above), its complaint pleads a plausible claim for violation of California's Unfair Competition Law.

**D.    Alternatively, Access Vapor Should be Given Leave to Amend.**

For the foregoing reasons, Breish's motion should be denied.  However, in the event that the Court grants the motion in whole or in part, Access Vapor respectfully requests leave to file an amended complaint to more fully set forth the relevant facts relating to its lawful use of the marks. *See Lopez v. Regents of the Univ. of California*, 5 F. Supp. 3d 1106, 1113 (N.D. Cal. 2013) (citing *Somers v. Apple, Inc.*, 729 F.3d 953, 960 (9th Cir. 2013), and observing that "[w]here a court grants a motion to dismiss under Rule 12(b)(6) or a motion for judgment on the pleadings under Rule 12(c), leave to amend should be freely given if it is possible that further factual allegations will cure any defect").

## CONCLUSION

For the foregoing reasons, Defendant Breish's motion for judgment on the pleadings should be denied.

A proposed form of order is enclosed.

1

2      Dated:  May 7, 2021                    THOMPSON HINE LLP

3

4                                             By:   /s/ Eric N. Heyer

5                                             Mendy Piekarski (326531)
                                              335 Madison Ave., 12th Fl.

6                                             New York, NY 10017
                                              Telephone: 212.908.3971

7                                             Facsimile: 212.344.6101

8                                             Eric N. Heyer
                                              (Admitted *Pro Hac Vice*)

9                                             Eric.Heyer@thompsonhine.com
                                              1919 M Street, N.W., Suite 700

10                                            Washington, D.C. 20036-3537
                                              Telephone:  202.263.4128

11                                            Facsimile: 202.331.8330

12                                            Carrie A. Shufflebarger
                                              (Admitted *Pro Hac Vice*)

13                                            Carrie.Shufflebarger@ThompsonHine.com
                                              312 Walnut Street, 14th Floor

14                                            Cincinnati, OH  45202
                                              Telephone:  513.352.6678

15                                            Facsimile:  513.241.4771

16                                            *Attorneys for Access Vapor, LLC*

17

18

19

20

21

22

23

24

25

26

27

28

ACCESS VAPOR'S OPPOSITION TO
MOTION FOR JUDGMENT ON THE
PLEADINGS

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of May, 2021, I caused a true and correct copy of the foregoing to be served via the Court's ECM/ECF system on the following:

Corey A. Donaldson, Esq.
Jessica M. Wan, Esq.

*Counsel for Defendants / Counterclaim Plaintiffs California Grown E-Liquids, LLC; Jeffrey Nelson; Jeffery Evans; Alexander Breish; and Propaganda E-Liquid, LLC*

Jonathan W. Brown, Esq.

*Counsel for Defendant Cuttwood LLC*

/s/ Mendy Piekarski
Mendy Piekarski

THOMPSON HINE LLP
ATTORNEYS AT LAW

- 17 -

ACCESS VAPOR'S OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS