COREY A. DONALDSON (CA Bar No. 280383)
JESSICA M. WAN (CA Bar No. 316389)
**FERGUSON CASE ORR PATERSON LLP**
1050 South Kimball Road
Ventura, CA 93004
Telephone: 805.659.6800
Facsimile: 805.659.6818
cdonaldson@fcoplaw.com
jwan@fcoplaw.com

Attorneys for Defendants and Counterplaintiffs
California Grown E-Liquids, LLC, Jeffrey Nelson,
Jeffery Evans, Alexander Breish, and Propaganda
E-Liquid, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| ACCESS VAPOR, LLC,<br><br>Plaintiff and Counterdefendant,<br><br>v.<br><br>CALIFORNIA GROWN E-LIQUIDS, LLC; JEFFREY NELSON; JEFFERY EVANS; ALEXANDER BREISH; AND PROPAGANDA E-LIQUID, LLC,<br><br>Defendants and Counterplaintiffs,<br><br>and<br><br>CUTTWOOD LLC,<br><br>Defendant. | CASE NO. 8:20-cv-02052 FLA (KESx)<br><br>**DEFENDANTS AND COUNTERPLAINTIFFS CALIFORNIA GROWN E-LIQUIDS, LLC, JEFFREY NELSON, JEFFERY EVANS, ALEXANDER BREISH, AND PROPAGANDA E-LIQUID, LLC'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: December 17, 2021<br>Time: 1:30 PM<br>Courtroom: 6B<br>Judge: Hon. Fernando L. Aenlle-Rocha |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 17, 2021, before the Honorable Fernando L. Aenlle-Rocha, United States District Court, First Street Courthouse, 350 W. 1st Street, Courtroom 6B, 6th Floor, Los Angeles, California 90012, Defendants and Counterplaintiffs California Grown E-Liquids, LLC, Jeffrey Nelson, Jeffery Evans, Alexander Breish, and Propaganda E-Liquid, LLC (collectively "Defendants") will and hereby do move pursuant to Federal Rule of Civil Procedure 56 for summary judgment against Plaintiff and Counterdefendant Access Vapor, LLC ("Plaintiff" or "Access Vapor").

Defendants move for summary judgment with regard to:

1) **Access Vapor's Pleaded Trademark Registrations:**

   a) Complaint Count I (Trademark Infringement in Violation of 15 U.S.C. § 1114),

   b) Defendants' Fourth Affirmative Defenses (Invalidity of Trademark Registrations), and

   c) Defendants' Second, Third, and Fourth Counterclaim Causes of Action for cancellation of each of Access Vapor's pleaded registrations; and

2) **Access Vapor's Pleaded Common Law Rights:**

   a) Complaint Count II (Trademark Infringement, Unfair Competition and False Designation of Origin in Violation of 15 U.S.C. § 1125(a)) and Count III (California Unfair Practices Act, Cal. Bus. & Prof. Code § 17200 *et seq.*),

   b) Defendants' Affirmative Defenses with regard to i) Lack of Rights; ii) Invalidity of Asserted Trademarks; iii) Non-Infringement; iv) with respect to the individual defendants, Lack of Personal Liability; v) with respect to the CALI PODS mark, Generic or Merely Descriptive; and in the alternative vi) Binding Agreement, and

   c) Defendants' First Counterclaim Causes of Action for declaratory judgment of invalidity and non-infringement of the CALI Marks.

This Motion is based on this Notice of Motion and Motion, the accompanying

Memorandum of Points and Authorities, the accompanying Statement of Uncontroverted Facts and Conclusions of Law, the accompanying Declaration of Corey A. Donaldson, the accompanying Declaration of Shawn Henn, all pleadings, records, and papers filed in this action, such further evidence as the Court may consider at, before, or following any hearing on this Motion, and any associated oral argument.

**Meet and Confer Pursuant to L.R. 7-3**

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on October 28, 2021.

DATED: November 12, 2021            FERGUSON CASE ORR PATERSON LLP

By:    /s/ Corey A. Donaldson
       COREY A. DONALDSON
       JESSICA M. WAN

       Attorneys for Defendants and Counterplaintiffs
       California Grown E-Liquids, LLC, Jeffrey Nelson,
       Jeffery Evans, Alexander Breish, and Propaganda
       E-Liquid, LLC

DEFENDANTS/COUNTERPLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Table of Authorities ......................................................................... v

I.    INTRODUCTION .......................................................................... 1

II.   BRIEF BACKGROUND ................................................................. 2

III.  SUMMARY JUDGMENT STANDARD .......................................... 4

IV.   ACCESS VAPOR HAS NO TRADEMARK RIGHTS BECAUSE IT HAS NEVER SOLD A LEGAL PRODUCT BEARING THE ASSERTED MARKS ................ 4

A.    The FD&C Act And The Deeming Rule Require Premarket Authorization To Sell Electronic Cigarettes And Related Products ........................................ 4

B.    All Goods Bearing One Or More Of The Asserted Trademarks Are Tobacco Products As Defined By 21 U.S.C. § 321(rr) .............................. 5

C.    Access Vapor Admits That It Has Not Received Premarket Authorization To Sell Its Products ......................................................... 6

D.    Access Vapor's Trademark Registrations Should Be Cancelled Because All Use Was And Continues To Be Illegal ...................................... 6

1.    Legal Standard For Cancellation Of Trademark Registrations .............. 6

2.    The '713 Registration Should Be Cancelled Because Any Use By Access Vapor Is Illegal .............................................. 7

3.    The '373 And '789 Registration Should Be Cancelled Because Access Vapor Cannot Show Any Legal Use ........................... 8

4.    Alternatively, The '373 Registration And '789 Registration Are Void *Ab Initio* Because The Listed Goods Were Illegal When The Subject Applications Were Filed ............................................... 9

E.    Access Vapor Has No Common Law Trademark Rights In The CALI Marks Due To Illegality Of Use ........................................... 11

1.    Legal Standard For Common Law Marks ......................... 11

2.    Access Vapor's Claims Regarding CALI AIR, CALI PLUS, And CALI MAXX Fail As A Matter Of Law Because It Never Lawfully Used The Marks In Commerce ............................................... 12

iii

DEFENDANTS/COUNTERPLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

3.  Access Vapor's Common Law Claims Regarding CALI PODS Fail
Because It Never Legally Used The Mark In Interstate Commerce ..... 12

4.  Alternatively, Access Vapor's Common Law Claims Regarding CALI
PODS Fail As A Matter Of Law Due To Lack Of Continuous Use ..... 13

V.  ACCESS VAPOR HAS NO EVIDENCE OF DAMAGES OR CAUSATION ......................... 14

A.  Summary Judgment Is Appropriate Where Plaintiff Cannot Show Damage .. 14

B.  Access Vapor Has No Evidence That It Has Been Damaged ......................... 15

C.  Access Vapor Is Barred From Any Recovery Based On Insufficient
Disclosures Regarding Damages .................................................................. 16

D.  Even If Access Vapor Could Show Damages, Summary Judgment Should Be
Granted Because It Cannot Show Causation ................................................ 17

VI.  ACCESS VAPOR HAS NO EVIDENCE ESTABLISHING INDIVIDUAL LIABILITY ............ 17

VII.  ACCESS VAPOR HAS NO RIGHTS IN THE CALI PODS MARK BECAUSE IT CANNOT
ESTABLISH SECONDARY MEANING .......................................................................... 18

A.  Legal Standard ............................................................................................. 18

B.  Access Vapor Has Produced No Evidence Of Secondary Meaning .............. 19

VIII.  ACCESS VAPOR CANNOT ESTABLISH LIKELIHOOD OF CONFUSION ......................... 20

A.  Lack Of Consumer Perception Evidence Is Fatal To Access Vapor's Claims 20

B.  Access Vapor Cannot Survive Summary Judgment Based On A *Sleekcraft*
Analysis ........................................................................................................ 20

1.  The Marks Are Completely Dissimilar But For Unprotectable
Elements ...................................................................................... 21

2.  Prominent Display Of Defendants' Marks Results In No Likelihood of
Confusion ..................................................................................... 23

IX.  IN THE ALTERNATIVE, ACCESS VAPOR'S CLAIMS ARE BARRED BY AN
ENFORCEABLE SETTLEMENT AGREEMENT BETWEEN THE PARTIES ........................ 23

X.  CONCLUSION ......................................................................................................... 25

iv

# TABLE OF AUTHORITIES

*Accuride Intern., Inc. v. Accuride Corp.*

  871 F.2d 1531 (9th Cir. 1989) ........................................................................ 20

*Adray v. Adry-Mart, Inc.*

  76 F.3d 984 (9th Cir. 1995) .......................................................................... 17

*Airhawk Int'l, LLC v. Ontel Prods. Corp.*

  No. CV-18-73-MMA-AGS 2020 WL 10321726 (S.D. Cal. January 2, 2020) .............. 16

*Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmnt, Inc.*

  744 F.3d 595 (9th Cir. 2014) ........................................................................ 13

*AMF, Inc. v. Sleekdraft Boats*

  599 F.2d 341 (9th Cir. 1979) ........................................................................ 21

*Anderson v. Liberty Lobby, Inc.*

  477 U.S. 242 (1986) ...................................................................................... 4

*Arpin v. Santa Clara Valley Transp. Agency*

  261 F.3d 912 (9th Cir. 2001) .......................................................................... 4

*Art Attacks Inc., LLC v. MGA Ent., Inc.*

  581 F.3d 1138 (9th Cir. 2009) ...................................................................... 19

*Aycock Eng'g v. Airflite*

  560 F.3d 1350 (Fed. Cir. 2009) .................................................................... 10

*Bradley v. Chiron Corp.*

  136 F.3d 1317 (9th Cir. 1998) ...................................................................... 24

*Brookfield Commc's, Inc. v. West Coast Ent. Corp.*

  174 F.3d 1036 (9th Cir. 1999) ................................................................. 21,23

*Brosnan v. Tradeline Sols., Inc.*

  681 F.Supp.2d 1094 (N.D. Cal. 2010) .......................................................... 14

*Botefur v. City of Eagle Point, Oregon*

  7 F.3d 152 (9th Cir. 1993) ........................................................................... 23

DEFENDANTS/COUNTERPLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

*Carter-Wallace, Inc. v. Procter & Gamble Co.*
    434 F.2d 794 (9th Cir. 1970) ........................................................................ 18

*Casual Coerner Assocs., Inc. v. Casual Stores of Nev., Inc.*
    493 F.2d 709 (9th Cir. 1974) ........................................................................ 13

*Celotex Corp. v. Catrett.*
    477 U.S. 317 (1986) ....................................................................................... 4

*Coach, Inc. v. Citi Trends, Inc.*
    No. CV-17-4775-DMG-KSx, 2019 WL 194062 (C.D. Ca. April 5, 2019) ................. 15

*Conversive, Inc. v. Conversagent, Inc.*
    433 F.Supp.2d 1079 (C.D. Cal. 2006) ........................................................... 13

*Comm. For Idaho's High Desert, Inc. v. Yost*
    90 F.3d 814 (9th Cir. 1996) ................................................................... 17,19

*Couture v. Playdom, Inc.*
    778 F.3d 1379 (Fed. Cir. 2015) ................................................................... 10

*CPC Int'l Inc. v. Skippy Inc.*
    3 USPQ2d 1456 (TTAB 1987) ...................................................................... 10

*CreAgri, Inc. v. USANA Health Scis., Inc.*
    474 F.3d 626 (9th Cir. 2007) ..........................................................*passim*

*Credit One Corp. v. Credit One Fin., Inc.*
    661 F.Supp.2d 1134 (C.D. Cal. 2009) ........................................................... 11

*Davis v. Metro Prods., Inc.*
    885 F.2d 515 (internal citations omitted) ................................................... 18

*Dena Corp. v. Belvedere Intern., Inc.*
    950 F.2d 1555 (Fed. Cir. 1991) ................................................................... 22

*Drayton v. Eastlink Prods., Inc.*
    No. CV-17-6408-VAP-PJWx, 2019 WL (C.D. Cal. Jan. 2, 2019) ................. 14,16

*Dreamwerks Pods. Grp., Inc. v. SKG Studio.*
    142 F.3d 1127 (9th Cir. 1998) ................................................................... 20

DEFENDANTS/COUNTERPLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

*Fifty-Six Hope Rd. Music, Ltd. V. A.V.E.L.A., Inc.*

   778 F.3d 1059 (9th Cir. 2015) ....................................................................... 15

*Glow Industries, Inc. v. Lopez*

   252 F.Supp.2d 962 (C.D. Cal. 2002) ............................................................ 11

*GoClear LLC v. Target Corp.*

   No. C 08-2134 MMC (N.D. Cal. Jan. 22, 2009) ............................................ 6

*In re Stanley Bros. Social Enters., LLC*

   2020 USPQ2d 10658, 2020 TTAB LEXIS 251 (TTAB 2020) ..................... 6,7

*Int'l Jensen, Inc. v. Metrosound, Inc.*

   4 F.3d 819 (9th Cir. 1993) .......................................................................... 19

*Japan Telecom, Inc. v. Japan Telcom Am. Inc.*

   287 F.3d 866 (9th Cir. 2002) ...................................................................... 18

*Kiva Health Brands LLC v. Kiva Brands Inc.*

   402 F. Supp.3d 877 (N.D. Cal. 2019) .......................................................... 6,8

*Ladas v. Cal. State Auto. Assn.*

   19 Cal.App.4th 761(1993) ........................................................................... 24

*Levi Strauss & Co. v. Blue Bell, Inc.*

   778 F.2d 1352 (9th Cir. 1987) .................................................................... 19

*Lindy Pen C. v. Bic Pen Corp.*

   982 F.2d 1400 (9th Cir. 1993) ................................................................ 15,17

*Marder v. Lopez*

   450 F.3d 445 (9th Cir. 2006) ...................................................................... 24

*Marketquest Grp., Inc. v. BIC Corp.*

   316 F.Supp.3d (S.D. Cal. 2018) .................................................................. 10

*Mattel, Inc. v. Talking Mt. Prods.*

   353 F.3d 792 (9th Cir. 2003) ...................................................................... 20

*Metamorfoza C.O.O. v. Big Funny, LLC*

   No. CV-21-2020-JFW-RAOx (Dkt. 135) (C.D. Cal. July 27, 2021) ............ 22

DEFENDANTS/COUNTERPLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

*Multi Time Mach., Inc. v. Amazon.com.Inc.*

    804 F.3d 930 (9th Cir. 2018) ................................................................... 21

*Nat'l Ass'n of Optometrists & Opticians v. Harris*

    682 F. 3d 1144 (9th Cir. 2012) .................................................................. 4

*Nelson-Ricks Cheese Co., Inc. v. Lakeview Cheese Co., LLC*

    331 F.Supp.3d 1131 (D. Idaho 2018) ....................................................... 14

*Nissan Fire & Marine Inc. Co. v. Fritz Cos., Inc.*

    210 F.3d 1099 (9th Cir. 2000) .................................................................. 14

*Off. Airline Guides,Inc. v. Goss*

    856 F.2d 85 (9th Cir. 1988) ...................................................................... 22

*Orgain, Inc. v. N. Innovations Holding Corp.*

    CV-18-1253-JLS-ADS-Dkt. 184 (C.D. Cal. Mar. 22, 2021) ....................... 19

*Pellett v. Sonotone Corp.*

    26 Cal.2d 705 (1945) ................................................................................ 24

*Rolex Watch, U.S.A., Inc. v. Michel Co.*

    179 F.3d 704 (9th Cir. 1999) .................................................................... 17

*S. Cal. Darts Ass'n v. Zaffina.*

    762 F.3d 921 (9th Cir. 2014) .................................................................... 8

*Sazerac Co. v. Fetzer Vineyards, Inc.*

    265 F.Supp.3d 1013 (N.D. Cal. 2017) ...................................................... 19

*Sengoku Works Ltd. v. RMC Int'l, Ltd.*

    96 F.3d 1217 (9th Cir. 1996) .................................................................... 12

*SunEarth, Inc. v. Sun Earth Solar Power Co.*

    839 F.3d 1179 (9th Cir. 2016) .................................................................. 15

*Surfvivor Media, Inc. v. Survior Prods.*

    406 F.3d 625 (9th Cir. 2005) .................................................................... 21

*Solofill, LLC v. Rivera*

    No. CV-17-2956-SJO-AJWx 2018 WL 6038287 (C.D. Cal. Aug. 3, 2018) ............... 20

DEFENDANTS/COUNTERPLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

*Soremekun v. Thrifty Payless, Inc.*

    509 F. 3d 978 (9th Cir. 2007) .................................................................... 4

*Spin Master, Ltd. V. Zobmando Entm't, LLC*

    944 F.Supp.2d 830(2012) ...................................................................... 13

*United Com. Ins. Serv. v. Paymaster Corp.*

    962 F.2d (9th Cir. 1992) ........................................................................ 23

*Use Techno Corp. v. Kenko USA, Inc.*

    No. CV-06-2754-EDL, 2007 WL 4169487 (N.D. Cal. Nov. 20, 2007) ...................... 16

*Wash. Mut. Inc. v. U.S.*

    636 F. 3d 1207 (9th Cir. 2011) .................................................................. 4

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*

    259 F.3d 1101 (9th Cir. 2001) .................................................................. 16

**STATUTES**

15 U.S.C. § 1051(a)(1) ................................................................................. 6

15 U.S.C. § 1057 (b) .............................................................................. 11,18

15 U.S.C. § 1094 .................................................................................. 11,18

15 U.S.C. § 1091(a) .................................................................................. 10

15 U.S.C. § 1114 .................................................................................... 14

15 U.S.C. § 1119 ................................................................................... 2,6

15 U.S.C. § 1125(a) ................................................................................. 14

21 U.S.C. § 301 ...................................................................................... 4

21 U.S.C. § 321(rr) ................................................................................. 3,5

21 U.S.C. § 387a ..................................................................................... 2

21 U.S.C. § 387a(b) .................................................................................. 5

21 U.S.C. § 387j(a)(2) .......................................................................... 3,5,12,13

DEFENDANTS/COUNTERPLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

**REGULATIONS**

21 C.F.R. § 101.36(f)(2) .................................................................................. 6

21 C.F.R. §§ 1100.1-1100.3............................................................................... 5

37 C.F.R. § 2.34(a)(1)(i) ................................................................................ 10

81 Fed. Reg. 28974-29106, *Deeming Tobacco Products To Be Subject to the Federal*

    *Food, Drug, and Cosmetic Act, as Amended by the Family Smoking Prevention and*

    *Tobacco Control Act; Regulations on the Sale and Distribution of Tobacco Products*

    *and Required Warning Statements for Tobacco Products* ......................................*passim*

**OTHER**

Fed. R. Civ. P. 12(c).................................................................................... 1-2

Fed. R. Civ. P. 26(a)(1)(A)(iii). ..................................................................... 16

Fed. R. Civ. P. 37(c)(1). ................................................................................ 16

Fed. R. Civ. P. 56(a) ...................................................................................... 4

McCarthy on Trademarks and Unfair Competition § 16:9 (5th ed. 2021)............. 11

Cal. Bus. & Prof. Code § 17200 ............................................................... 11,14

Cal. Bus. & Prof. Code § 17204 .................................................................. 14

# I.    INTRODUCTION

Plaintiff Access Vapor, LLC ("Plaintiff" or "Access Vapor") has been a purveyor of e-cigarette products since its founding in 2018. It claims ownership of various trademarks, some of which are registered, and alleges that defendants California Grown E-Liquids, LLC ("California Grown"), Jeffrey Nelson ("Nelson"), Jeffery Evans ("Evans"), Alexander Breish ("Breish"), and Propaganda E-Liquid, LLC ("Propaganda")[1] have infringed on those supposed trademark rights.

But Access Vapor's assertions are fatally flawed as matter of law. None of the trademarks that Access Vapor purports to own is valid or enforceable. The law and facts here are well-settled: 1) trademark rights require **lawful** use in commerce, and 2) Access Vapor does not have lawful use. Every product that Access Vapor has ever sold under its asserted marks is admittedly a "tobacco product" as defined by the Federal Food, Drug, and Cosmetic Act, which requires premarket authorization from FDA before hitting the market—premarket authorization that Access Vapor has admittedly never received.

Access Vapor also has no factual evidence to support its claims against the entities—California Grown or Propaganda—or the individuals—Nelson, Evans, or Breish. Fact discovery closed on October 15, 2021, and no party disclosed an expert by the October 22, 2021 deadline. Access Vapor has **no** evidence that it has been damaged in any way, or that such purported damage was caused by Defendants' actions. Similarly, Access Vapor's mark CALI PODS indisputably requires secondary meaning to be protected—and Access Vapor's evidence of secondary meaning is insufficient as a matter of law. Access Vapor's claims based on its other marks also fail, because the only similarity that it can point to between its marks and Defendants' marks is use of the word CALI—an unprotected term disclaimed in Access Vapor's registrations.

---

[1] "Defendants" as used herein refers to defendants and counterplaintiffs California Grown, Nelson, Evans, Breish, and Propaganda, but does not include defendant Cuttwood LLC.

DEFENDANTS/COUNTERPLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

After reneging on a binding settlement agreement between the parties, Access Vapor filed a nuisance lawsuit alleging infringement of trademarks that it knew or should have known were invalid due to illegality of use, and that it knew or should have known were not infringed even if they were valid. It then sat on its hands and failed to prosecute its case, resulting in a lack of admissible evidence on damages, causation, secondary meaning, and likelihood of confusion, to name a few. Summary judgment should thus be entered for Defendants.

## II.     BRIEF BACKGROUND

In early 2020, California Grown and Propaganda received demand letters from Access Vapor accusing them of infringing trademarks owned by Access Vapor. [SUF No. 1]. After a few months of emails between counsel, Access Vapor and California Grown agreed to resolve these claims for $5,000. [SUF No. 2]. Access Vapor subsequently reneged and filed the instant lawsuit on or about October 26, 2020. Dkt. 1.

Access Vapor named California Grown, Propaganda, Nelson, Evans, Breish, and Cuttwood as defendants, alleging claims for trademark infringement of both registered and unregistered marks, as well as unfair competition. *Id.* With their Answers, Defendants California Grown, Propaganda, Breish, Evans, and Nelson filed Counterclaims against Access Vapor for declaratory judgment of invalidity and noninfringement of all asserted marks, as well as cancellation of the asserted registrations under 15 U.S.C. § 1119. Dkts. 25-28, 48.

Currently pending before the Court are two other motions in this matter. The first is a motion for judgment on the pleadings filed by Defendant Breish on March 30, 2021. Dkt. 61. The second is Access Vapor's Motion to Extend the Trial Date and All Related Dates in the Scheduling Order, filed on October 15, 2021. Dkt. 83.

The trademarks at issue in the case are summarized below, and include six word marks and one design mark (the "Cali Pods Logo"):

/ / /

DEFENDANTS/COUNTERPLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

| Asserted Mark | Status |
|---|---|
| CALI PODS | Supplemental Reg. No. 5718373 (the "'373 Registration"); "PODS" disclaimed |
| **CALI PODS** | Principal Reg. No. 5953789 (the "'789 Registration"); "CALI PODS" disclaimed |
| CALI AIR DISPOSABLE | Principal Reg. No. 6135713 (the "'713 Registration"); "CALI" and "DISPOSABLE" disclaimed |
| CALI AIR | Unregistered |
| CALI PLUS | Unregistered |
| CALI MAXX | Unregistered |

*See* Dkts. 1, 48-2, 48-3, and 48-4.

The registered marks are all in class 34 for vaping and e-cigarette related goods. [SUF No. 3]. The unregistered marks have been asserted with regard to "vapor products containing nicotine, including, *inter alia*, disposable e-cigarette products." Complaint ¶¶ 12, 13.

Since August 8, 2016, vaping and e-cigarette related goods have been subject to the same Federal Food & Drug Administration ("FDA") regulations as other "tobacco products" (as defined by 21 U.S.C. § 321(rr)), like traditional cigarettes. *See* Donaldson Decl. ¶ 5, Ex. A (81 Fed. Reg. 28974-29106). All tobacco products require premarket authorization from FDA under 21 U.S.C. § 387j(a)(2). "Each of the products that have borne one or more of the [asserted marks] have included nicotine derived from tobacco as an ingredient," and as such, qualify as "tobacco products." [SUF Nos. 4, 5]; Donaldson Decl. ¶ 5, Ex. C at Interrogatory No. 5. Yet Access Vapor has never received premarket authorization from FDA for any product. [SUF No. 6].

DEFENDANTS/COUNTERPLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

### III.   SUMMARY JUDGMENT STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Wash. Mut. Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party "bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail by pointing out that the nonmoving party lacks evidence to support its case. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

If the moving party meets its initial burden by pointing to a lack of evidence, the opposing party must then set out "specific facts" showing a genuine issue for trial to defeat the motion. *Anderson*, 477 U.S. at 250. "The mere existence of a scintilla of evidence in support of the nonmoving party's position" is not sufficient; this party must present probative evidence in support of its claim or defense. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

### IV.   ACCESS VAPOR HAS NO TRADEMARK RIGHTS BECAUSE IT HAS NEVER SOLD A LEGAL PRODUCT BEARING THE ASSERTED MARKS

#### A.   The FD&C Act And The Deeming Rule Require Premarket Authorization To Sell Electronic Cigarettes And Related Products

The Federal Food, Drug, and Cosmetic Act (the "FD&C Act") authorizes the Food & Drug Administration ("FDA") to oversee the safety of food, drugs, medical devices, and cosmetics. 21 U.S.C. § 301 *et seq*. Prior to 2016, electronic cigarettes and related products were not subject to many FDA regulations. Effective August 8, 2016, however,

FDA invoked its statutory power under 21 U.S.C. § 387a(b) and "deemed" such products to be subject to the FD&C Act. 21 U.S.C. § 387a *et seq.*; Donaldson Decl. ¶ 5, Ex. A ("Deeming Rule" or "DR", 81 Fed. Reg. 28974-29106); 21 C.F.R. §§ 1100.1-1100.3.

The "Deeming Rule" made clear that e-cigarettes, e-cigars, e-hookah, vape pens, personal vaporizers, and electronic pipes are all tobacco products subject to FDA regulation. *See, e.g.*, DR at 81 Fed. Reg. 29028 ("although there are many types of [electronic nicotine delivery systems, or "ENDS"] (including e-cigarettes, e-cigars, e-hookah, vape pens, personal vaporizers, and electronic pipes), all are subject to FDA's chapter IX authorities with this final deeming rule"). Similarly, components and parts of tobacco products are themselves considered to be tobacco products, including, for instance, "flavors," "cartridges," "pods," and "atomizers." 21 U.S.C. § 321(rr); 21 C.F.R. §§1100.1-1100.3; DR at 81 Fed. Reg. 28975, 29019, 29028.

Section 910 of the FD&C Act requires FDA authorization before a company may market a new tobacco product. DR at 81 Fed. Reg. 29009; 21 U.S.C. § 387j(a)(2). "Once deemed, tobacco products become subject to the FD&C Act and its implementing regulations." DR at 81 Fed. Reg. 28980. Therefore, as of August 8, 2016, newly deemed products such as electronic cigarettes, cartridges, pods, and atomizers became subject to the same premarket review requirements of the FD&C Act as older products such as cigarettes. 21 U.S.C. § 387j(a)(2); DR at 81 Fed. Reg. 28976. As of August 8, 2016, all electronic cigarettes, cartridges, pods, and atomizers—i.e., Access Vapor's products at issue in this lawsuit—became illegal unless they had premarket authorization.

## B.    All Goods Bearing One Or More Of The Asserted Trademarks Are Tobacco Products As Defined By 21 U.S.C. § 321(rr)

Access Vapor admits that "[e]ach of the products that have borne one or more of the [asserted marks] have included nicotine derived from tobacco as an ingredient." [SUF No. 4]; Donaldson Decl. ¶ 5, Ex. C at Interrogatory No. 5. As such, all are tobacco products as defined by the FD&C Act and require premarket authorization under 21 U.S.C. § 387j(a)(2). *See also* dkt. 61 at 3-5 and 10 (discussing each good in detail).

**C.    Access Vapor Admits That It Has Not Received Premarket Authorization To Sell Its Products**

Access Vapor admits that it "has never received premarket authorization from FDA for any products." [SUF No. 6]; Dkt. 48 ("Counterclaims") ¶ 65, admitted in dkt. 56 ("Counterclaim Answer").[2]

**D.    Access Vapor's Trademark Registrations Should Be Cancelled Because All Use Was And Continues To Be Illegal**

    1.    Legal Standard For Cancellation Of Trademark Registrations

Under 15 U.S.C. § 1119, the Court "may . . . order the cancelation of registrations, in whole or in part . . . with respect to the registrations of any party to the action." To be registered with a Section 1(a) basis, a trademark must be "used in commerce." 15 U.S.C. § 1051(a)(1). The United States Patent and Trademark Office ("USPTO") and federal courts have repeatedly held that a mark's "use in commerce" **must be a lawful use**.[3] The Ninth Circuit has explicitly held that "only *lawful* use in commerce can give rise to trademark priority." *CreAgri, Inc. v. USANA Health Scis., Inc.*, 474 F.3d 626, 630 (9th Cir. 2007) (emphasis in original). That a use **could** have been legal if a trademark holder had, for example, applied for and been granted authorization from regulatory authorities, is of no avail; the trademark holder must have actually obtained such authorization. *Id.* at 623-33 (illegality not excused where trademark holder could have applied for and been granted exemption from FDA under 21 C.F.R. § 101.36(f)(2), but did not do so). The lawful use requirement "is also applicable to a claim for cancellation of a registered mark." *Kiva Health Brands LLC v. Kiva Brands Inc.*, 402 F.Supp.3d 877, 888 (N.D. Cal. 2019) (*citing GoClear LLC v. Target Corp.,* No. C 08-2134 MMC, 2009 WL 160624, at *3 (N.D. Cal. Jan. 22, 2009)); *see also In re Stanley Bros. Social Enters., LLC*, 2020

---

[2] The Counterclaims of Defendant Alexander Breish (dkt. 48) and the answer thereto (dkt. 56) are referenced herein.

[3] Defendant Breish has filed a motion for judgment on the pleadings on grounds similar to those discussed in Section IV, which remains pending. *See* dkts. 61, 64, 66.

DEFENDANTS/COUNTERPLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

USPQ2d 10658, 2020 TTAB LEXIS 251 (TTAB 2020) (refusing registration based on violation of the FD&C Act).

Because the USPTO has "little or no familiarity with most [federal regulatory acts]," "the USPTO's longstanding practice has been to presume a mark's use in commerce is lawful unless the application record indicates a violation of federal law." *In re Stanley Bros.*, 2020 USPQ2d 10658, 2020 TTAB LEXIS 251 at *11-12 (citations omitted). As such, legality is typically not a subject of USPTO examination, but instead addressed in USPTO *inter partes* proceedings or court proceedings such as this one.

2.    The '713 Registration Should Be Cancelled Because Any Use By Access Vapor Is Illegal

In their Counterclaims, Defendants seek cancellation of U.S. TM Reg. No. 6135713 (the "'713 Registration") for the standard character mark CALI AIR DISPOSABLE, in Int'l Class 034 for "Cartridges sold filled with chemical flavorings in liquid form for electronic cigarettes" (the "'713 Goods"). *See* dkt. 1 ("Complaint") ¶ 14; Counterclaims ¶¶ 85-89, Ex. 4 at 25. The '713 Registration was issued under a Section 1(a) "use in commerce" basis. [SUF No. 7]. In order for the mark to register in this way, Access Vapor was required to be lawfully using the CALI AIR DISPOSABLE mark in interstate commerce in relation to the '713 Goods. *Supra* at 6.

Access Vapor admits that "neither Access Vapor nor any predecessor in interest used the CALI AIR DISPOSABLE mark until after August 8, 2016," the effective date of the Deeming Rule. [SUF No. 8]; Counterclaims ¶ 56, admitted in Counterclaim Answer. The '713 Goods are tobacco products subject to the FD&C Act, and any products sold by Access Vapor under the mark have thus always required premarket authorization that Access Vapor admittedly lacks. *Supra* at Sections IV(B)-IV(C). Any and all use of the '713 Registration by Access Vapor has thus been illegal, and Access Vapor is not entitled to any rights in the mark under *CreAgri, Inc. v. USANA Health Scis., Inc.*, 474 F.3d 626,

DEFENDANTS/COUNTERPLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

630 (9th Cir. 2007).[4] As such, the registration must be cancelled.[5]

### 3.    The '373 And '789 Registrations Should Be Cancelled Because Access Vapor Cannot Show Any Legal Use

Access Vapor was founded in 2018, and thus itself could not have begun using either of the CALI PODS Mark or Cali Pods Logo prior to the effective date of the Deeming Rule. Instead, Access Vapor has claimed use of the CALI PODS mark and the Cali Pods Logo "as early as 2015" through a predecessor-in-interest, ANA Equity, LLC. Counterclaim Answer ¶ 18; Donaldson Decl. ¶ 5, Ex. C at Response to Interrogatory No. 1. However, despite numerous discovery requests from Defendants, Access Vapor has utterly failed to show any use of either of these marks prior to August 8, 2016.

Indeed, Defendants sought to compel documents showing such use from Access Vapor, and on October 12, 2021, the Magistrate Judge ordered Access Vapor to produce "any documents relating to ANA Equity, LLC's use of the [asserted marks] and any documents relating to ANA Equity, LLC's transfer of rights in any of the [asserted marks] to Access Vapor." [SUF No. 9]; Donaldson Decl. ¶ 5, Ex. D at RFP No. 8. In response, all Access Vapor could produce were 1) a 2019 letter from Access Vapor to FDA including scanned copies of three invoices purporting to be from 2015-2016 and including the words "Cali pods"; and 2) a grouping of native Excel files that were **last**

---

[4] The Ninth Circuit has also established two exceptions to the lawful use requirement: 1) where the illegality is "so harmless or de minimis that it should be excused as 'immaterial'" (*CreAgri*, 474 F.3d at 633 (citations omitted)), and 2) "where there is an insufficient nexus between the unlawful behavior and the use of the mark in commerce." *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 931 (9th Cir. 2014) (finding a lack of nexus where trademark holder had failed to pay taxes). Neither of these exceptions is applicable in this case, where the very goods covered by the trademarks themselves are illegal. *See, e.g., Kiva Health Brands LLC v. Kiva Brands Inc.*, 402 F.Supp.3d 877, 888, n. 9 (N.D. Cal. 2019) (exceptions did not apply where products included federally illegal THC).
[5] As an additional ground, the '713 Registration should be cancelled as void *ab initio*, because the subject application was filed in 2020 (SUF No. 7) and the mark was not in lawful use at that time. *See* Section IV(D)(4), *infra*.

DEFENDANTS/COUNTERPLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

modified and saved in 2019 (or later)—some only days before Access Vapor responded to FDA's letter alleging that the Cali Pods products were subject to FDA enforcement because they had not been on the market prior to August 8, 2016. Henn Decl. ¶ 3, Ex. A; [SUF No. 10] (March 27, 2019 save date versus March 29, 2019 letter to FDA).

Access Vapor failed to produce **a single email, a single advertisement, a single website screenshot, a single social media post, a single corporate or assignment document, or a single native document with metadata** showing use of the phrase "Cali Pods" prior to 2018, and has admitted that there was no usage of CALI PODS or the Cali Pods Logo on any website or social media until 2018 or after.[6,7] [SUF Nos. 11, 12]. Finally, Access Vapor listed first use dates for the '373 Registration and '789 Registration as July 1, 2018 and February 22, 2019, respectively. [SUF No. 13]. Thus, no reasonable juror could conclude that ANA Equity used either the CALI PODS mark or the Cali Pods Logo prior to 2018, let alone that Access Vapor was somehow the successor-in-interest to trademark rights based on such use.

        4.      Alternatively, The '373 Registration And '789 Registration Are Void *Ab Initio* Because The Listed Goods Were Illegal When The Subject Applications Were Filed

Even if the CALI PODS mark and Cali Pods Logo were in use in 2015 and Access Vapor is entitled to that priority date, the Cali Pods Registrations are still invalid and should be cancelled because they did not meet the use in commerce requirement when the subject applications were filed with the USPTO.

---

[6] To the extent that Access Vapor claims it does not have possession, custody, or control over such files, this is belied by the facts that 1) Access Vapor must have had access to those files when it responded to FDA in 2019 providing supposed evidence of pre-Deeming Rule sales, 2) upon Access Vapor's founding, its 100% owner was president of ANA Equity, and 3) the invoices from 2015-2016 include the company name "Access Vapor." [SUF Nos. 10, 14-16].
[7] Notably, even the questionable documentation produced by Access Vapor alleged to show use prior to 2018 fails to show any use of the Cali Pods Logo. [SUF No. 17].

DEFENDANTS/COUNTERPLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

"Use in commerce must be '**as of the application filing date**.' 37 C.F.R. § 2.34(a)(1)(i). 'The registration of a mark that does not meet the use [in commerce] requirement is void ab initio.'" *Couture v. Playdom, Inc.*, 778 F.3d 1379, 1380 (Fed. Cir. 2015) (quoting *Aycock Eng'g v. Airflite, Inc.*, 560 F.3d 1350, 1357 (Fed. Cir. 2009)) (emphasis added). "[A]pplications are void *ab initio*" where "the marks were not in use on the indicated [goods] as of the filing dates of the applications." *CPC Int'l Inc. v. Skippy Inc.*, 3 USPQ2d 1456, 1460 (TTAB 1987); *see also Marketquest Grp., Inc. v. BIC Corp.*, 316 F.Supp.3d 1234, 1291 (S.D. Cal. 2018) (a void *ab initio* "challenge is based on the notion that the application for the registration of the mark did not comply with the statutory requirements to register a mark," and "[b]ecause use is a predicate to the acquisition of trademark rights, '[t]he registration of a mark that does not meet the use requirement is void *ab initio*'") (collecting citations).

The '373 Registration and the '789 Registration matured from applications filed under a Section 1(a) actual use basis.[8] [SUF No. 18]. The associated marks therefore had to be in use in commerce as of the filing dates of the respective applications. But when these applications were filed on October 15, 2018 and May 29, 2019, respectively (*id.*), the Deeming Rule had already taken effect (DR at 81 Fed. Reg. 28974), and the goods listed in the applications were tobacco products that had not received premarket authorization. *See* Sections IV(A)-IV(C), *supra*. Those goods—even if they were being sold—were thus not in use in commerce, because "a 'use in commerce' means a lawful use." *CreAgri, Inc.*, 474 F.3d at 628; *see also* 474 F.3d at 634 ("A mark is only eligible for supplemental registration if it was in 'lawful use in commerce' prior to the date on which the holder applied for such registration. 15 U.S.C. § 1091(a)."). Because neither

---

[8] Access Vapor **could** have applied under a Section 1(b) intent-to-use basis, and then filed for extensions of time for filing a statement of use to perfect that registration while it waited for FDA approval; but it did not do so. *See* TMEP § 1108.02(f) (listing "steps to obtain required government approval" as satisfying the "good cause" requirement to extend the statement of use deadline).

10

the CALI PODS mark nor the Cali Pods Logo was in lawful use in commerce in association with the associated goods upon the filing of each of the respective applications, the Cali Pods Registrations are void *ab initio* and should be cancelled.[9]

**E.    Access Vapor Has No Common Law Trademark Rights In The CALI Marks Due To Illegality Of Use**

1.    Legal Standard For Common Law Marks

"In order to prevail on a Lanham Act false designation claim or a common law trademark infringement claim, a plaintiff must show that it owns a valid mark, that the mark was used without its consent, and that such unauthorized use is likely to cause confusion, mistake, or deception." *Credit One Corp. v. Credit One Fin., Inc.*, 661 F.Supp.2d 1134, 1137 (C.D. Cal. 2009) (*citing* 15 U.S.C. §§ 1114, 1125). These standards also apply to Lanham Act unfair competition claims and California state law unfair competition under Cal. Bus. & Prof. Code §§ 17200 *et seq. See Glow Indus., Inc. v. Lopez*, 252 F.Supp.2d 962, 975, n.90 (C.D. Cal. 2002) (collecting citations).

Access Vapor alleges common law infringement of four marks: the standard character marks CALI PODS, CALI AIR, CALI PLUS, and CALI MAXX (collectively, the "CALI Marks"). Complaint ¶ 13; *see also* Complaint, Counts II and III. Of the CALI Marks, only CALI PODS is registered, though it is registered on the Supplemental Register as opposed to the Principal Register. [SUF No. 32]. A plaintiff asserting a common law trademark of a trademark registered only on the Supplemental Register must establish by a preponderance of actual evidence that it owns a protectable mark. *Glow Indus.*, 252 F.Supp.2d at 976; *see also* 15 U.S.C. § 1094 (excluding marks registered on the supplemental register from the presumptions given by 15 U.S.C. § 1057(b)).

---

[9] Any argument by Access Vapor regarding FDA compliance periods for products on the market prior to the effective date of the Deeming Rule should be rejected. FDA made clear that despite any compliance period, regulatory requirements still legally went into effect as of August 8, 2016. DR at 81 Fed. Reg. 29006.

DEFENDANTS/COUNTERPLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

### 2.    Access Vapor's Claims Regarding CALI AIR, CALI PLUS, And CALI MAXX Fail As A Matter Of Law Because It Never Lawfully Used The Marks In Commerce

Access Vapor claims to own rights to the marks CALI AIR, CALI PLUS, and CALI MAXX in association with "vapor products containing nicotine, including, *inter alia*, disposable e-cigarette products" (the "Cali Goods"). Complaint ¶ 12, 13. "To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996). But "use in commerce only creates trademark rights when the use is *lawful*." *CreAgri, Inc.*, *supra*, 474 F.3d 626, 630 (9th Cir. 2007).

"[N]either Access Vapor nor any predecessor in interest used" any of CALI AIR, CALI PLUS, and CALI MAXX "prior to August 9, 2016," and "Access Vapor began marketing products under" each of these marks "in 2019 or later." [SUF Nos. 19, 20]; Counterclaims ¶¶ 59-64, admitted in Counterclaim Answer. Thus, all use of these marks has always been subject to the Deeming Rule, effective August 8, 2016. And, as discussed above, "Section 910 of the FD&C Act requires FDA authorization in order to market a new tobacco product." DR at 81 Fed. Reg. 29009; *see also* 21 U.S.C. § 387j(a)(2). Access Vapor "has never received premarket authorization from FDA for any products." [SUF No. 6]; Counterclaims ¶ 65, admitted in Counterclaim Answer. Any and all use of the marks CALI AIR, CALI PLUS, and CALI MAXX with the Cali Goods (the only goods pleaded by Access Vapor) is thus illegal. As a matter of law, Access Vapor therefore cannot establish trademark rights in these marks, and all claims related to these marks should be dismissed.

### 3.    Access Vapor's Common Law Claims Regarding CALI PODS Fail Because It Never Legally Used The Mark In Interstate Commerce

As discussed *supra* in Section IV(D)(3), Access Vapor has failed to produce evidence such that a reasonable juror could conclude that its use of CALI PODS tracked

back to 2015 through a predecessor-in-interest. Instead, the earliest a reasonable juror could conclude that Access Vapor began using the CALI PODS mark would be in 2018, well after the effective date of the Deeming Rule. Thus, Access Vapor's use has always been illegal and it cannot have common law rights in the CALI PODS mark.

> 4.    Alternatively, Access Vapor's Common Law Claims Regarding CALI PODS Fail As A Matter Of Law Due To Lack Of Continuous Use

"The Ninth Circuit has imposed a strict 'continuous use' requirement to demonstrate common law priority: 'To be a continuous use, the use must be maintained without interruption.'" *Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 944 F.Supp.2d 830, 851 (C.D. Cal. 2012) (*quoting Casual Corner Assocs., Inc. v. Casual Stores of Nev., Inc.*, 493 F.2d 709, 712 (9th Cir. 1974)). "Even short periods of nonuse," such as one or two years, "can break the chain of continuous use." *Id.* at 851 (*citing Casual Corner Assocs., Inc.*, 493 F.2d at 712, and *Conversive, Inc. v. Conversagent, Inc.*, 433 F.Supp.2d 1079, 1089 (C.D. Cal. 2006)). Moreover, this continuous use must "ha[ve] continued to the present." *Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmnt, Inc.*, 744 F.3d 595, 599 (9th Cir. 2014) (*quoting Watec Co., Ltd. v. Liu*, 403 F.3d 645, 654 (9th Cir. 2005)); *see also* 2 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 16:9 (5th ed. 2021, Mar. 2021 update) ("To establish ownership of a mark, the prior user must establish not only that at some date in the past it used the mark, but that such use has continued to the present.").

In its Counterclaim Answer, Access Vapor claims use of the CALI PODS mark through a predecessor in interest going back to 2015. Counterclaim Answer ¶ 18. But in the trademark context, the word "use" in "continuous use" as required by the Ninth Circuit means "lawful use." *CreAgri, supra*, 474 F.3d at 640. Any use of the CALI PODS mark by Access Vapor has been illegal since the Deeming Rule took effect on August 8, 2016, because Access Vapor has not received premarket authorization as required by 21 U.S.C. § 387j(a)(2). In the Ninth Circuit, "sporadic, casual, and nominal" use does not satisfy the continuous use requirement. *See, e.g., Spin Master, Ltd.*, 944 F.Supp.2d at 852.

DEFENDANTS/COUNTERPLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Access Vapor does not even have that. Non-use of the CALI PODS mark in lawful interstate commerce for the over four years leading up to the present lawsuit, and upon the filing of the lawsuit, means that Access Vapor lacks rights in the CALI PODS mark as a matter of law.[10]

## V.    ACCESS VAPOR HAS NO EVIDENCE OF DAMAGES OR CAUSATION

### A.    Summary Judgment Is Appropriate Where Plaintiff Cannot Show Damage

"The moving party may produce evidence negating an essential element of the nonmoving party's case, or . . . show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000). Damages are an essential element to Access Vapor's claims. *See, e.g.*, *Drayton v. Eastlink Prods., Inc.*, No. CV-17-6408-VAP-PJWx, 2019 WL 650418, at *1-2 (C.D. Cal. Jan. 2, 2019) (granting motion for summary judgment on claims for, *inter alia*, 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), and California Business and Professions Code § 17200 *et seq.*, based on inability to show damages); see also *Nelson-Ricks Cheese Co., Inc. v. Lakeview Cheese Co., LLC*, 331 F.Supp.3d 1131, 1144 (D. Idaho 2018), *aff'd*, 775 F. App'x 350 (9th Cir. 2019) (granting summary judgment against a trademark infringement claim where "[plaintiff] cannot prove even a single dollar in damages"); *Brosnan v. Tradeline Sols., Inc.*, 681 F.Supp.2d 1094, 1103 (N.D. Cal. 2010) (granting summary judgment where plaintiff could not "put forth evidence supporting a finding that he 'suffered injury in fact and has lost money or property as a result of unfair competition,'" citing Cal. Bus. & Prof. Code § 17204).

///

---

[10] Additionally, Access Vapor has produced no evidence of even illegal use between August 8, 2016 and mid-2018. [SUF No. 21]. Even taking the illegality issue aside, this period of non-use serves to destroy any priority claim to 2016, especially in light of the miniscule alleged use from that period. [SUF No. 11].

DEFENDANTS/COUNTERPLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

### B.      Access Vapor Has No Evidence That It Has Been Damaged

Trademark plaintiffs can "recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action," "subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity." 15 U.S.C. § 1117(a). "The trademark holder has the burden to prove the defendant infringer's gross revenue from the infringement." *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1076 (9th Cir. 2015) (citing *Lindy Pen C. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016)).

During discovery, Access Vapor failed to present any evidence regarding the value of the marks at issue, any diminution of that value, the value of any purported lost sales, or any quantification of any harm it has suffered. [SUF No. 22]. Nor has Access Vapor presented any evidence regarding Defendants' gross revenue. [SUF No. 23]. Because Access Vapor has failed to meet its burden, it is not entitled to any damages. *See, e.g.*, *Coach, Inc. v. Citi Trends, Inc.*, No. CV-17-4775-DMG-KSx, 2019 WL 1940622, at *6 (C.D. Cal. Apr. 5, 2019) ("While the *calculation* of damages is a fact issue not ordinarily subject to summary judgment, Coach has not offered *any* evidence of Citi Trends' revenue stemming from the infringement . . . . As a result, any amount of actual damages Coach proposes would be impermissibly speculative." (collecting citations)).

To the extent that Access Vapor contends that "it was unable to put forth any evidence of its damages because [defendants] did not produce sufficient documentation of [their] revenue during discovery," "[i]t does not appear . . . that [plaintiff] moved to compel [Defendants] to produce the materials [plaintiff] needed to calculate its damages, and discovery is now closed. *See* Fed. R. Civ. P. 37(a)." *Coach, Inc.*, at *12. "As a result, any amount of actual damages [plaintiff] proposes would be impermissibly speculative." *Id.* (citing *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993)).

///

### C.    Access Vapor Is Barred From Any Recovery Based On Insufficient Disclosures Regarding Damages

"Numerous courts in this Circuit have prevented a plaintiff from presenting evidence on damages due to insufficient disclosures, particularly when the discovery period has concluded." *Drayton v. Eastlink Productions, Inc.*, No. CV-17-6408-VAP-PJWx, 2019 WL 650418, at *3 (C.D. Cal. Jan. 2, 2019) (collecting citations). Here, fact discovery closed on October 15, 2021, and the initial expert disclosure deadline of October 22, 2021 passed without any party disclosing an expert. Dkt. 59; [SUF No. 24]. The time for damages disclosures has come and gone. Yet the only time Access Vapor has addressed a computation of damages as required by Fed. R. Civ. P. 26(a)(1)(A)(iii) was in its initial disclosures from March 5, 2021, where it stated that "Access Vapor will supplement to provide its computation of damages upon the completion of relevant discovery." [SUF No. 25]; Donaldson Decl. ¶ 5, Ex. G. It has not done so. [SUF No. 25].

"[I]f a party fails to provide information as required by Rule 26(a), 'the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless.'" *Airhawk Int'l, LLC v. Ontel Prods. Corp.*, No. CV-18-73-MMA-AGS, 2020 WL 10321726, at *22 (S.D. Cal. Jan. 2, 2020) (*citing* Fed. R. Civ. P. 37(c)(1)). "The party facing sanctions bears the burden of demonstrating the late disclosure was substantially justified or is harmless." *Id.* at *10 (citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001)).

Here, Access Vapor "failed to disclose any damages experts and failed to disclose any damages theory or computation of damages in initial disclosures as required by Federal Rule of Civil Procedure 26(a)(1)(C), in supplemental disclosures" or in discovery responses. *Use Techno Corp. v. Kenko USA, Inc.*, No. CV-06-2754-EDL, 2007 WL 4169487, at *2-4 (N.D. Cal. Nov. 20, 2007) (granting "motion for summary judgment based on Plaintiff's failure to disclose damages"); [SUF No. 25]. Access Vapor should thus be barred under Fed. R. Civ. P. 37(c)(1) from presenting damages evidence, and

DEFENDANTS/COUNTERPLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1    summary judgment granted to Defendants on all claims.

2        **D.    Even If Access Vapor Could Show Damages, Summary Judgment**

3            **Should Be Granted Because It Cannot Show Causation**

4        Additionally, Access Vapor cannot establish damages as a matter of law because it

5    has no evidence that any alleged damage was caused by trademark infringement. Access

6    Vapor has asked the Court to award damages and profits. *See, e.g.*, dkt. 1 ¶ 42. Under an

7    actual damages theory, however, Access Vapor would need to present evidence showing

8    that the damage was **caused** by Defendants' alleged infringement. *Lindy Pen C., Inc. v.*

9    *Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993) ("lost profits which the plaintiff

10   would have earned but for the infringement"); *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988

11   (9th Cir. 1995) (corrective advertising "is intended to make the plaintiff whole. It does so

12   by allowing the plaintiff to recover the cost of advertising undertaken to restore the value

13   plaintiff's trademark has lost due to defendant's infringement."). Similarly, to collect

14   Defendants' profits, Access Vapor must show a causal link between Defendants' sales

15   and the alleged trademark infringement. *See Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179

16   F.3d 704, 712 (9th Cir. 1999) (holding that plaintiff carries burden to show with

17   "reasonable certainty" defendant's gross sales from infringing activity).

18       But Access Vapor cannot establish that any alleged infringement by Defendants

19   caused Access Vapor to lose profits or engage in corrective advertising. [SUF No. 22].

20   And Access Vapor presents no evidence that Defendants made any sales due to alleged

21   infringement—or, in fact, any sales **at all**. [SUF No. 23]. Because Access Vapor has no

22   evidence of causation or sales, it cannot prove damages as a matter of law.

23   **VI.   ACCESS VAPOR HAS NO EVIDENCE ESTABLISHING INDIVIDUAL LIABILITY**

24       Access Vapor unnecessarily forced three individual defendants into this lawsuit—

25   Nelson, Evans, and Breish. Personal liability for trademark liability can stem from either

26   alter ego liability or direct participation in the tort. *Comm. For Idaho's High Desert, Inc.*

27   *v. Yost*, 92 F.3d 814 (9th Cir. 1996). The Ninth Circuit has noted that "[c]ases which have

28   found personal liability on the part of corporate officers have typically involved instances

where the defendant was the 'guiding spirit' behind the wrongful conduct, . . . or the 'central figure' in the challenged corporate activity." *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 524 n. 10 (9th Cir. 1989) (internal citations omitted). Their liability is predicated on the individuals' alleged direction of and participation in the alleged trademark infringement and unfair competition and continued sales after California Grown's dissolution. Complaint ¶¶ 21-22. Access Vapor, however, cannot point to or present a single fact or document supporting its individual liability theory to create an issue of material fact. [SUF No. 26]. Indeed, it never served any of these individuals with a **single** discovery request. [SUF No. 27]. As such, the Court should enter summary judgment in Nelson, Evans, and Breish's favor as to all causes of action.

## VII. ACCESS VAPOR HAS NO RIGHTS IN THE CALI PODS MARK BECAUSE IT CANNOT ESTABLISH SECONDARY MEANING

### A.    Legal Standard

The CALI PODS mark, in the light most favorable to Access Vapor, is descriptive in nature. [SUF Nos. 29, 30]. A mark that is descriptive of the goods it identifies is not entitled to trademark protection unless a plaintiff shows that the name has acquired secondary meaning. *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 873 (9th Cir. 2002).[11] Secondary meaning requires a plaintiff to show that there is "a mental recognition in buyers' and potential buyers' minds that products connected with the [mark] are associated with the same source." *Id.* How a consumer perceives the mark is the quintessential test for secondary meaning. *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 802 (9th Cir. 1970) ("[T]he chief inquiry is directed towards the consumer's attitude about the mark in question: does it denote to him a single thing coming from a single source?"). "[A] product's trademark or trade dress acquires a

---

[11] Because the '373 Registration for CALI PODS is on the Supplemental Register, Access Vapor is not entitled to a presumption of ownership of a valid mark, but must instead prove secondary meaning. *See* 15 U.S.C. § 1094 (excluding marks registered on the supplemental register from the presumptions given by 15 U.S.C. § 1057(b)).

secondary meaning when the purchasing public associates the mark or dress with a single producer or source rather than with the product itself." *Int'l Jensen, Inc. v. Metrosound, Inc.*, 4 F.3d 819, 824 (9th Cir. 1993) (citing *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1987)).

### B.    Access Vapor Has Produced No Evidence Of Secondary Meaning

Access Vapor has failed to provide any expert testimony or consumer survey on secondary meaning, and has not otherwise produced evidence as to how consumers perceive the CALI PODS mark in the marketplace. [SUF No. 31]. *See, e.g., Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 822 (9th Cir. 1996) (while survey evidence is "not a requirement," it is "one of the most persuasive ways to prove secondary meaning"). Rather, Defendants can only assume that Access Vapor intends to rely solely on accounting spreadsheets showing alleged sales, and perhaps its own social media posts. But the law is clear that such data alone cannot establish evidence of secondary meaning. *See Int'l Jensen, Inc. v. Metrosound, Inc.*, 4 F.3d 819, 824 (9th Cir. 1993) ("While evidence of a manufacturer's sales, advertising and promotional activities may be relevant in determining secondary meaning, the true test of secondary meaning is the ***effectiveness*** of this effort to create it." (emphasis added)). Access Vapor has failed to produce a single document or discovery response showing that any alleged sales or advertising effectively created secondary meaning, because it has no evidence of consumer perception. [SUF No. 31]; *Sazerac Co. v. Fetzer Vineyards, Inc.*, 265 F.Supp.3d 1013, 1034 (N.D. Cal. 2017) ("Sazerac provided no evidence that its marketing efforts effectively created secondary meaning, or that its sales are due to Buffalo Trace's trade dress."). "Where, as here, a trademark plaintiff has proffered no evidence of how consumers perceive the mark, evidence of advertising efforts will not preclude summary judgment as to secondary meaning." *Orgain, Inc. v. N. Innovations Holding Corp.*, No. CV-18-1253-JLS-ADS, Dkt. 184) (C.D. Cal. Mar. 22, 2021) (Donaldson Decl. ¶ 5, Ex. I) (citing *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1146 (9th Cir. 2009)).

Case 8:20-cv-02052-FLA-KES   Document 88   Filed 11/12/21   Page 31 of 38   Page ID #:1858

Unable to establish secondary meaning in the CALI PODS mark, Access Vapor cannot establish the first element of trademark infringement: that there be a legally protectable mark. *Supra* at Section IV(E)(1). As such, the Court should grant summary judgment to Defendants on all causes of action with regard to the CALI PODS mark.

## VIII. ACCESS VAPOR CANNOT ESTABLISH LIKELIHOOD OF CONFUSION

### A. Lack Of Consumer Perception Evidence Is Fatal To Access Vapor's Claims

To prevail, Access Vapor must prove a likelihood of confusion. *Mattel, Inc. v. Talking Mt. Prods.*, 353 F.3d 792, 807 (9th Cir. 2003). Access Vapor cannot establish this element as a matter of law because it lacks evidence on consumer perception, which is central to the likelihood of confusion inquiry. *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998) ("The test for likelihood of confusion is whether a reasonably prudent consumer in the market place is likely to be confused as to the origin of the good or service bearing one of the marks."); *Accuride Intern., Inc. v. Accuride Corp.*, 871 F.2d 1531, 1535 (9th Cir. 1989) ("The critical focus of the likelihood of confusion inquiry is . . . the effect of defendant's usage of the name on prospective purchasers in the marketplace"). Access Vapor has not provided any expert, survey, or factual evidence regarding consumer perception. [SUF No. 31]. Without this evidence, Access Vapor cannot survive summary judgment because its evidence "consist[s] of little more than a presentation of the two products side-by-side and the use of attorney argument to fill in the rest of its case. This, without more is insufficient to meet its burden and state a claim for trademark infringement." *Solofill, LLC v. Rivera*, No. CV-17-2956-SJO-AJWx, 2018 WL 6038287, at *5 (C.D. Cal. Aug. 3, 2018).

### B. Access Vapor Cannot Survive Summary Judgment Based On A *Sleekcraft* Analysis

Access Vapor may attempt to argue that trademark cases are factual in nature and that the *Sleekcraft* test used to analyze a likelihood of confusion precludes summary judgment. Undisputed facts in a particular case can give rise to a finding of no likelihood

DEFENDANTS/COUNTERPLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

of confusion as a matter of law. *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 936 (9th Cir. 2018). That is why, as noted by the Ninth Circuit, "in several trademark cases, we have concluded that there is no likelihood of confusion as a matter of law and affirmed the district court's grant of summary judgment in favor of the defendant." *Id.* at 935; see also *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005). Moreover, the Court need not look to all *Sleekcraft* factors, but only one: "[w]here the marks are entirely dissimilar, there is no likelihood of confusion."[12] *Brookfield Comms., Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999). Such a holding is appropriate here.

### 1.    The Marks Are Completely Dissimilar But For Unprotectable Elements

Access Vapor has accused Defendants of infringement based on alleged use by Defendants of the phrase CALI BARS as shown in paragraphs 24, 26, and 30 of the Complaint. But where, as is the case here, the only similarity between the asserted marks and the accused marks is a disclaimed or unprotectable element, the marks are entirely dissimilar as a matter of law, and summary judgment should be granted to Defendants.

There can be no reasonable dispute that the term CALI, in and of itself, is not inherently distinctive. This is shown, for example, by the fact that the USPTO forced disclaimer of the CALI term in both the '789 Registration and the '713 Registration.[13] [SUF Nos. 33, 34]. Moreover, Access Vapor has not claimed secondary meaning in the term CALI by itself. Thus, with regard to the asserted standard character marks, "it is

---

[12] The *Sleekcraft* factors are: (1) strength of the mark;  (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).

[13] A USPTO trademark disclaimer states that "[n]o claim is made to the exclusive right to use the following apart from the mark as shown: [disclaimed subject matter]." *See, e.g.*, Counterclaims Ex. 2 at 64, Ex. 3 at 65, Ex. 4 at 25.

DEFENDANTS/COUNTERPLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

readily apparent that there are no similarities other than the disclaimed word[]" CALI (or, in the case of the unregistered marks, the unprotectable element CALI). *Metamorfoza C.O.O. v. Big Funny, LLC*, No. CV-21-2020-JFW-RAOx (Dkt. 135) (C.D. Cal. July 27, 2021) (Donaldson Decl. ¶ 5, Ex. J), slip copy at *7. Access Vapor "attempts to allege a claim for trademark infringement . . . based solely on the use of the disclaimed component of that mark, which it may not do." *Id.* (citing *Off. Airline Guides, Inc. v. Goss*, 856 F.2d 85, 87 (9th Cir. 1988) ("OAG alleges that Ashbyweb has used only the disclaimed words, not the mark as a whole. The district court therefore did not err in finding that OAG had not demonstrated a serious question concerning the alleged infringement of its registered mark.")). The court in *Metamorfoza* explained in detail (slip copy at *6):

> Indeed, "[a] disclaimer shows that the applicant enjoys no exclusive rights to the disclaimed [portion of the mark] apart from the composite mark. . . . The applicant's competitors in the same trade must remain free to use [the] descriptive terms without legal harassment." *Dena Corp. v. Belvedere Intern., Inc.*, 950 F.2d 1555, 1560 (Fed. Cir. 1991). In other words, as explained by Professor McCarthy: "If plaintiff has a registration of the composite mark A + B, with B disclaimed, then it does not have a claim for infringement of the registered trademark against a defendant who uses mark B." McCarthy § 19:72. *See also* McCarthy § 16.35. ("If the law will not protect one's claim of right to exclude others from using an alleged trademark, then he does not own a 'trademark,' for that which all are free to use cannot be a trademark."). Accordingly, the Court concludes that Metamorfoza cannot state a claim for infringement of its [registered mark] based solely on Defendants' use of the disclaimed words.

Access Vapor's assertion of its standard character marks here should fail for the same reason: those assertions are "based solely on Defendants' use of the disclaimed" and unprotectable word CALI.

With regard to the Cali Pods Logo, Access Vapor's claim also fails. It cannot claim infringement based on any alleged use of the term CALI by Defendants, and Defendants do not use the word PODS. With regard to the remainder of the Cali Pods Logo, Access

DEFENDANTS/COUNTERPLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Vapor itself describes the mark's distinctive element as the terms being "separated by a colored bar that either displays a bear puffing vapor or identifies the flavor of the product." Complaint ¶ 15. But the accused marks include neither of the elements that Access Vapor describes as giving the Cali Pods Logo its distinctiveness. [SUF No. 35]. Another distinctive element of the Cali Pods Logo, the letter "I" emulating a vaping product, is also lacking from the accused marks. *See* Counterclaims ¶ 24, admitted in Counterclaim Answer; [SUF No. 36]. Because the "marks are entirely dissimilar, there is no likelihood of confusion." *Brookfield Comms., Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999).[14]

> ## 2.    Prominent Display Of Defendants' Marks Results In No Likelihood of Confusion

Where "the products ha[ve] their respective housemarks . . . prominently on the packaging," "it is implausible that a consumer would be deceived." *Arcona, Inc. v. Farmacy Beauty, LLC*, 976 F.3d 1074, 1081 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2800 (2021). Such is the case here. The only use by Defendants identified by Access Vapor clearly includes Defendants' source identifiers. Complaint ¶¶ 24, 26, 30. As such, summary judgment should be granted to Defendants.

## IX.    IN THE ALTERNATIVE, ACCESS VAPOR'S CLAIMS ARE BARRED BY AN ENFORCEABLE SETTLEMENT AGREEMENT BETWEEN THE PARTIES

Summary judgment should be granted because the parties entered into an enforceable settlement agreement resolving Access Vapor's claims, which Access Vapor reneged on by filing the instant lawsuit. "The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." *United Com. Ins. Serv. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992); *see also Botefur v. City of Eagle Point, Oregon*, 7 F.3d 152, 156 (9th Cir.

---

[14] An analysis including all eight factors would also result in judgment as a matter of law to Defendants, at least due to Access Vapor's lack of evidence.

DEFENDANTS/COUNTERPLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1993) (the interpretation of a settlement agreement is governed by principles of state contract law, even where a federal cause of action is settled or released).

California law strongly favors settlement of disputes and enforcement of releases. *See, e.g., Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (9th Cir. 1998). A release is the "abandonment, relinquishment or giving up of a right or claim to the person against whom it might have been demanded or enforced . . . and its effect is to extinguish the cause of action." *Marder v. Lopez*, 450 F.3d 445, 449 (9th Cir. 2006) (quoting *Pellett v. Sonotone Corp.*, 26 Cal.2d 705, 711 (1945) (overruled on other grounds)). "Whether a contract is sufficiently definite to be enforceable is a question of law for the court." *Ladas v. Cal. State Auto. Assn.* (1993) 19 Cal.App.4th 761, 770, n. 2.

Between January 29, 2020 and August 24, 2020, counsel for Defendants and then-counsel for Access Vapor had the following email exchange [SUF Nos. 37-40]:

- On March 10, 2020, counsel for Defendants sent an email to then-counsel for Access Vapor stating: "We remain willing to settle the case under the terms previously offered: namely, a one-time $5,000 payment and a redesign to the new logo previously proposed."

- After initially declining on March 27, 2020, Access Vapor counsel then emailed on July 14, 2020: "After consideration, my client would like to counter your last offer by accepting the other terms and your redesign but requiring a payment of $10,000."

- On August 24, 2020, counsel for Defendants responded: "My client is willing to pay $5,000 to resolve this matter, but not the new $10,000 that Access Vapor has demanded."

- Later that same day (August 24, 2020), Access Vapor counsel responded: "Accepted."

Here, every element of contract formation as described by the Judicial Counsel of California Civil Jury Instructions (May 2020), § 302 has been met:

1. **"That the contract terms were clear enough that the parties could**

24

DEFENDANTS/COUNTERPLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

**understand what each was required to do"**: Defendants were required to pay $5,000 and redesign the logo, and Access Vapor was required to release Defendants.[15]

2.    **"That the parties agreed to give each other something of value [a promise to do something or not to do something may have value]"**: The payment of $5,000 and the redesign of the accused logo had value to Access Vapor, and the release had value to Defendants.

3.    **"That the parties agreed to the terms of the contract"**: The emails between counsel show clear offer and acceptance.

Because Access Vapor and Defendants entered into a valid, enforceable contract releasing Defendants, Access Vapor's claims fail.

## X.    CONCLUSION

For at least the foregoing reasons, summary judgment for Defendants should be granted.

Respectfully submitted,

DATED: November 12, 2021          FERGUSON CASE ORR PATERSON LLP


                                  By:    /s/ Corey A. Donaldson
                                         COREY A. DONALDSON
                                         JESSICA M. WAN

                                         Attorneys for Defendants and Counterplaintiffs
                                         California Grown E-Liquids, LLC, Jeffrey Nelson,
                                         Jeffery Evans, Alexander Breish, and Propaganda
                                         E-Liquid, LLC

---

[15] To the extent that Access Vapor contends that one or more defendants have not met their obligations under the contract, Access Vapor has not alleged breach of contract in the Complaint.

DEFENDANTS/COUNTERPLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the Electronic Service List for this Case.


DATED: November 12, 2021          FERGUSON CASE ORR PATERSON LLP


                                 By:    /s/ Corey A. Donaldson
                                        COREY A. DONALDSON
                                        JESSICA M. WAN

                                        Attorneys for Defendants and Counterplaintiffs
                                        California Grown E-Liquids, LLC, Jeffrey Nelson,
                                        Jeffery Evans, Alexander Breish, and Propaganda
                                        E-Liquid, LLC

DEFENDANTS/COUNTERPLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

**<u>STATEMENT REGARDING CONFERENCE OF COUNSEL UNDER L.R. 7-3</u>**

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on October 28, 2021.


DATED: November 12, 2021                FERGUSON CASE ORR PATERSON LLP


                              By:    /s/ Corey A. Donaldson
                                     COREY A. DONALDSON
                                     JESSICA M. WAN

                                     Attorneys for Defendants and Counterplaintiffs
                                     California Grown E-Liquids, LLC, Jeffrey Nelson,
                                     Jeffery Evans, Alexander Breish, and Propaganda
                                     E-Liquid, LLC

DEFENDANTS/COUNTERPLAINTIFFS' MOTION FOR SUMMARY JUDGMENT